PHILLIPS PIPELINE
COMPANY, Appellant,

v.

Dane B. RICHARDSON, et
al., Appellees.

No. 08–83–00043–CV.

Court of Appeals of Texas,
El Paso.

Oct. 24, 1984.

Harrell Feldt, Marc L. Skeen, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, for appellant.

John E. Gunter, Rassman, Gunter & Boldrick, Midland, John L. Pratt, Odessa, Mark Withrow, Robert P. Abbott, Turpin, Smith, Dyer & Saxe, Midland, W.O. Shafer, Shafer, Gilliland, Davis, McCollum & Ashley, Odessa, for appellees.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This appeal complains of the recovery by Dane Richardson, as Plaintiff, for damages awarded to him for injuries received from a pipeline blowout and concerns the inadmissible reference to insurance during the trial. The rights of the Defendant, Phillips Pipeline Company, to be indemnified by Gulf Oil Corporation and Three Way Constructors, Inc., are also involved. We affirm the judgment of the trial court which awarded the Plaintiff his damages and which denied Phillips Pipeline Company any right of indemnification as to Gulf Oil Corporation. We reverse and remand for new trial that portion of the judgment which awarded a take-nothing judgment in favor of Three Way Constructors, Inc., as to Phillips Pipeline's cross-action for indemnity.

Warren Petroleum Company as a division of Gulf Oil Corporation leased from Phillips Petroleum Company a four-inch gathering line for the purpose of carrying liquified petroleum gases. The gathering line ran from a location in Coke County west

through Sterling County to a location in Glasscock County. Warren had, in connection with this lease and on the same day, entered into a Pipeline Service Agreement with Phillips Pipeline Company whereby the latter agreed to repair leaks and cathodic protection. On November 30, 1977, a rancher reported to Phillips Pipeline Company, a gas leak on the line about fifteen miles north of Sterling City. Phillips Pipeline, through its natural gas liquids maintenance supervisor, Raymond Oehler, inspected the site of the leak and reported to Ed Foster, also of Phillips Pipeline and who was in charge of all liquid pipeline in the area, and they decided to repair the line the following day. On the following day, Oehler and another Phillips Pipeline employee led a crew from Three Way Constructors, Inc., to the location of the leak. Three Way had previously entered into a contract with Phillips Pipeline to furnish necessary work and had a crew which was devoted solely to doing repairs for Phillips Pipeline. The Plaintiff Richardson was a part of that crew. Once at the site of the leak, the Three Way crew dug out the ground around the leak. There was a conflict in the testimony about the character of the leak and as to how much pressure was in the line at the time it was to be repaired. Oehler and Walter Williams, employees for Phillips Pipeline, maintained that there was a pinhole in the pipe and that the pressure was at 725 psi and dropping. Plaintiff testified that there was a three quarters of an inch split in the seam of the pipe, that he overheard Oehler and Williams say that the line had 850 psi and that Williams was concerned about that high pressure. Oehler, as the supervisor on location, decided to repair the line with a clamp rather than bleed the line and replace it with a joint. Williams then attempted to place the clamp on the line while the Plaintiff Richardson stood nearby with a fire extinguisher. In the process, the line erupted, blowing out gas and debris, causing the injuries to Richardson for which he brought suit.

The Plaintiff sued Phillips Petroleum Company, Phillips Pipeline Company and Gulf Oil Corporation for damages for his injuries from the alleged negligent conduct of the Defendants in repairing the gas pipeline leak. Phillips Pipeline filed a cross-action and pled for indemnity from Gulf and filed a third party complaint for indemnity against Three Way Constructors. At the close of the Plaintiff's case, the trial court granted directed verdicts for Gulf and Phillips Petroleum against Richardson and at the close of all the evidence, a directed verdict was entered in favor of Gulf as to Phillips Pipeline's cross-action.

In response to special issues, the jury found that Phillips Pipeline acting through Oehler, was negligent in attempting to repair the leak with a bolt on leak clamp and that such negligence was a proximate cause of the accident. The jury then found that the Plaintiff knew of the risk of working on the gas line but failed to find that he was negligent. The trial court submitted a comparative negligence issue between only Richardson and Phillips Pipeline. The jury attributed zero percent negligence to the Plaintiff and fifty percent to Phillips Pipeline, acting by and through its employee Oehler. The jury awarded the Plaintiff $100,000.00 compensation for his injuries. Judgment was then rendered on the verdict of the jury that the Plaintiff and his workman's compensation carrier—intervenor—have judgment against Phillips Pipeline in the sum of $100,000.00 and that Phillips Pipeline take nothing as to its cross-action against Three Way.

In Points of Error Nos. One, Two and Eight, Phillips Pipeline argues that to the full extent of the Plaintiff's judgment, it is entitled to be indemnified against its own negligence by Gulf by virtue of the indemnity clause contained in paragraph 8 of the Pipeline Service Agreement made between Warren and Phillips Pipeline. That clause is as follows:

Warren agrees to assume the entire responsibility and liability for losses, expenses, damages, demands and claims in connection with and arising out of any injury or alleged injury to persons or damage or alleged damage to property (other than property of Phillips Pipe) sus-

tained or alleged to have been sustained in connection with or to have risen out of in any way the work performed by Phillips Pipe, its servants, employees, agents or independent contractors under the terms of this agreement and to indemnify Phillips Pipe from and against any and all such losses, expenses, damages, demands and claims, except to the extent that such losses, expenses, damages, demands and claims are covered by Phillips Pipe's Workman's Compensation Insurance.

■ In order for an indemnity agreement to protect an indemnitee from the consequences of its own negligence, the obligation of the indemnitor to do so need not be stated in so many words, but must be expressed in clear and unequivocal terms. *Firemen's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818, 882 (Tex.1973); *Sira & Payne, Inc. v. Wallace & Riddle*, 484 S.W.2d 559, 561 (Tex.1972); *Joe Adams & Son v. McCann Construction Co.*, 475 S.W.2d 721, 723 (Tex.1972). Texas courts have been progressively stricter in applying the "clear and unequivocal" rule in the sundry cases that have dealt with the issue over the last three decades. *Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208, 211 (Tex.1980). However, as noted in *Firemen's Fund, supra*, there exist exceptions where broad general statements of indemnification will create an indemnity obligation as to the consequences of the indemnitee's negligence and one concerns "agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality...."

Phillips Pipe argues that the contract provisions meet the "clear and unequivocal" rule and regardless of that, it argues that even if it does not meet the "clear and unequivocal" rule, it is entitled to indemnity under the exception in *Firemen's Fund* as set out above.

■ The problem with the position adopted by Phillips Pipeline was that it presented no proof that the repairs involved were ever made under the terms of the Pipeline service agreement. The first ground of Gulf's motion for instructed verdict as to Phillips Pipeline's cross-action for indemnity filed at the close of all the evidence and which was granted was to the effect that no proof was ever offered that Gulf was ever properly notified of the problem or ever authorized the repair work, and thus the Plaintiff's injuries were unrelated to the contract. Gulf points out that paragraph 8 of the pipeline service agreement provided that the indemnity provision covered only damage sustained in connection with work performed "under the terms of this agreement...." Paragraph 3 of the Pipeline service agreement states that "Phillips Pipe will perform service on said pipeline only when requested to do so by Warren...." Other parts of the contract list the only three persons authorized to request repair service on behalf of Gulf and there was no evidence offered that anyone at Gulf ever ordered or authorized the work. Under the proof before us, Foster and Oehler of Phillips Pipeline acted on their own in making the repairs.

Phillips Pipeline has made no attack on this part of Gulf's motion for instructed verdict which was sustained, nor does it contest Gulf's brief and argument in that regard. It appears that the injury involved was never within the area to which the indemnity provision was applicable. *Sun Oil Company v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Points of Error Nos. One, Two and Eight insofar as they relate to Gulf are overruled.

Points of Error Nos. Three, Four, Five and Eight concern Phillips Pipeline's third party complaint against Three Way Constructors, Inc. Point of Error No. Three complains that the trial court erred in directing a verdict in favor of Three Way as to the third party complaint. Although Three Way moved for a directed verdict against Phillips Pipeline on that complaint,

the trial court denied the motion. The point is overruled.

Points of Error Nos. Four and Eight complain that the trial court failed to enter judgment in favor of Phillips Pipeline and against Three Way, as the evidence established as a matter of law Phillips Pipeline's right to indemnity from and against Three Way. The written employment contract between Phillips Pipeline and Three Way as the Contractor contained the following indemnification obligation:

Contractor shall indemnify and hold Company harmless from any and all claims, liabilities and causes of action of, to, or by third persons, including Contractor, his subcontractors, or the employees of either, for injury to or death of any person and for damage to or destruction of any property, resulting directly or indirectly from any and all acts or omissions of Contractor, his subcontractors, or of anyone else directly or indirectly employed by either of them in connection with the performance of any work provided for herein and regardless of whether such injury, death, damage and/or destruction is contributed to by the negligence of Company, its agents, servants, and/or employees, and on behalf of Company and in Company's name will handle or defend at its own expense any claim or litigation in connection therewith. The indemnity provided for in this paragraph shall have no application to any claim, liability or cause of action resulting from the sole negligence of Company, its agents, servants, and/or employees.

This contract appears to be much clearer than the one with Gulf in calling for indemnification to Phillips Pipeline for the consequence of its own negligence. Even here, there is a limitation to Three Way's indemnification obligation in that it is not so obligated as a consequence of the Plaintiff's injuries if they result from the sole negligence of Phillips Pipeline. Here, the only specific act of negligence found was that of Phillips Pipeline; yet under this point, Phillips Pipeline argues that the duty to indemnify arose as a matter of law be-

cause of the jury's answer made to the comparative negligence issue which was submitted as between only Richardson and Phillips Pipeline, attributing zero percent negligence to the Plaintiff and fifty percent to Phillips Pipeline acting by and through its employee Oehler. Phillips concludes its argument stating that under the verdict all that was required to entitle Phillips Pipeline to judgment on its cross-action against Three Way was for the jury to find that any negligence existed on the part of any other person other than Phillips Pipeline, and that it did.

We do not agree. Phillips Pipeline is attempting to use the comparative negligence issue submitted under Article 2212a, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1984), between its negligence and that of the Plaintiff, to establish its recovery under the contract. More specifically, there has been no finding within the terms of the contractual obligation, one way or another, that the claim did or did not result from the sole negligence of Phillips Pipeline. In this regard, the one special issue submitted on primary negligence limited the inquiry as to Phillips Pipeline only to its employee Oehler and not to the company in all its other actions or inactions. Points of Error Nos. Four and Eight as they relate to Three Way are overruled.

Point of Error No. Five complains of the trial court's failure to submit to the jury issues inquiring as to the negligence of Three Way Constructors, Inc., and in particular of its foreman, thus denying Phillips Pipeline Company the opportunity of securing a finding of negligence by Three Way Constructors, Inc. Phillips Pipeline requested of the court special issues that Three Way Constructors knew and appreciated the risk of working on the gas line at the time and on the occasion in question. Companion issues inquire if such action on the part of Three Way Constructors in working on the gas line was negligence and if it was a proximate cause of the accident in question. Identical issues were requested as to Johnny Graham, the foreman for Three Way Constructors on the job. The

court did submit the identical inquiry as to the Plaintiff Richardson and, as previously pointed out, the jury failed to find that his action in working on the gas line at the time and on the occasion in question was negligence. Thus, the trial court made the inquiry as to the Plaintiff's actions for two reasons. First, to determine if the Plaintiff was contributorily negligent in his lawsuit and if so, the percentage under the comparative negligence issue. And second, to determine, if the Plaintiff was negligent, which favorable determination would create the right of indemnity of Phillips Pipeline against Three Way Constructors.

It is Phillips Pipeline's position that evidence was also introduced as to the negligence of the third party Defendant Three Way Constructors as a result of the acts and omissions of Johnny Graham, Three Way's supervisor on location at the time of the explosion, and that was the basis for the requested issues which were refused. The test by which we must view the evidence to determine if the issues should have been submitted is the same as where the court instructs a verdict. The evidence must be considered most favorably in behalf of the party against whom the issues were refused and if there is any conflicting evidence in the record of probative nature, a determination of the issue is for the jury. If such evidence is of sufficient force that reasonable minds might differ as to the ultimate conclusion to be reached, the theory should then be submitted to the jury. 3 R. McDonald, Texas Civil Practice sec. 11.28.2 (1983 rev.). Turning to the evidence in the manner that we are required, we find that Graham was a supervisor of Three Way's crew during the repair work and was in the hole when the leak was visible. He could see the slit in the pipe as he filed the dirt and rust from the pipeline in preparation for the use of the clamp. He was present when Williams and Oehler were talking about the pressure on the line, yet he went ahead and assisted in repairing the line with a bolt on clamp, the use of which was found by the jury to constitute negligence. Plaintiff, who was positioned with a fire extinguisher just outside the hole, was getting his instructions from Graham. Oehler of Phillips Pipeline was in charge of the operation, but he never gave instructions to the Plaintiff. His instructions were to Graham as foreman or supervisor of the Three Way crew. Oehler's instructions to Three Way related to the job desired. The details of performance were left to Three Way and in particular Graham. Three Way was experienced in repairing leaks on high pressured gas lines, and this was a typical job for Three Way. While the evidence was that Phillips Pipeline made the decision to use the bolt on clamp, the evidence was equally clear that Graham, as supervisor of the Three Way crew, never expressed any concern about the repair process being utilized. Although holding themselves out to be experienced and knowledgeable as to such repairs, Three Way and its employees, in particular Graham, armed with the same information as Phillips Pipeline employees, went forward with the procedure found by the jury to be negligent. There was testimony from the Plaintiff's expert in support of the Plaintiff's claim against the Defendants that utilization of the bolt on clamp while the pipeline was under significant pressure was extremely dangerous. That testimony was equally effective in establishing that Three Way should have recognized and avoided that procedure under the circumstances existing. Finally, there was testimony from Three Way's safety supervisor Evans that the Three Way crew had authority not to follow any direction given by Oehler if there was any danger present; yet no action was taken by Graham on behalf of his crew and Three Way to avoid participating in the very process and procedure found to be negligent. We hold that a fact issue was present as to the negligence of Three Way and in particular Graham in continuing working on the gas line under the circumstances. If negligence on the part of those individuals had been found, it would have been attributable to Three Way. This would represent a finding that Phillips Pipeline was not solely negligent and that in turn would require a judgment of indemnity over against Three Way. The fifth point of error is sustained.

Points of Error Nos. Six and Seven involve Richardson mentioning insurance on redirect examination. A review of the pertinent facts is necessary. Counsel for Gulf cross-examined Richardson about the sequence of doctors he had seen since engaging an attorney. Richardson had seen a Dr. Hestand following the accident. Hestand was the company physician for Three Way. Hestand had treated Richardson and released him to go back to work. Counsel for Gulf asked Richardson if after Hestand refused to treat him, he went to see Mr. Pratt, his attorney. Richardson answered affirmatively. Counsel for Gulf then asked Richardson if his attorney had sent him to Dr. Santos in Lubbock. Richardson testified that he did. Then counsel for Gulf asked Richardson about the witness's sequence of seeing four different doctors, inquiring about the length of treatment with each doctor and the length of time in between each doctor. On redirect examination, Richardson's counsel asked the Plaintiff the following:

Q. Okay. You next went to see Dr. Santos up in Lubbock. Do you remember who sent you to see Dr. Zeeck?

A. No, sir.

Q. Were you going to see these doctors to try to find out what was wrong with you?

A. Yes, sir.

Q. You next saw Dr. Evans up in Lubbock. Could you tell us who sent you to see Dr. Evans?

A. I believe you set it up with the insurance company; didn't you, to go up there.

Q. You saw Dr. Manicom here in Odessa. Do you know who sent you to see Dr. Manicom?

A. The insurance company did, I think.

Q. You went and saw Dr. Turner after Dr. Manicom sent you to Turner for your ear problem; is that right?

A. Yes, sir.

There was no objection to these questions and answers. After this questioning, counsel for Phillips Pipeline asked for a bench conference. Counsel for Phillips Pipeline told the trial court that he wanted to clear up the answers about the insurance. He told the trial court that the insurance company referred to by Richardson was the workman's compensation carrier. The trial court then said it would permit counsel for Phillips to ask three questions. These were (1) whether there was a workman's compensation claim filed as a result of the accident, (2) whether the workman's compensation claim involved an insurance company which was the carrier and (3) whether the insurance company was the one who sent Richardson to one or more of the doctors. On recross examination, counsel for Phillips started to ask the following question: "[n]ow, Mr. Richardson, Mr. Pratt had asked you if an insurance company had sent you to see—" Thereupon, counsel for Richardson interrupted and asked to approach the bench. As a result of this bench conference, the trial court changed its ruling about allowing the three questions. The trial court then reemphasized to the jury the previous instruction given at the time the jurors were sworn in to not consider or discuss insurance. This was followed by another bench conference in which the trial court granted the request of counsel for Phillips Pipeline to make a bill of exception which developed that Plaintiff was sent to the doctor by the workman's compensation carrier.

■ Point of Error No. Six is that the trial court erred in denying the motion of Phillips Pipeline for a mistrial from the injection of insurance in the case. Phillips Pipeline, in its own brief, admits that it failed to make a timely objection to the court regarding the injection of insurance. Regardless of that, we have reviewed the circumstances and we believe that such statement does not constitute such error as would result in a reversal of the judgment. The point is overruled.

■ In Point of Error No. Seven, Phillips Pipeline urges that the trial court erred in not allowing the questioning on recross examination to explain the reference. The trial court at the urging of that Defendant

agreed to allow it to ask the questions set out above and thereupon, that Defendant in violation of the court's instructions renewed its inquiry regarding whether or not an insurance company had sent the Plaintiff to a doctor. At that point, the judge changed his rulings and again he gave the instructions to the jury that they should not consider, discuss or speculate whether or not any party is or is not protected in whole or in part by insurance of any kind. Under the circumstances, the court was justified in changing its ruling. It is our opinion, in view of the length of this trial, that the court's instructions were adequate to eliminate any harmful effect. Regardless, the mention in this case was not calculated in any degree to cause the jury to render a verdict which it would not otherwise have reached. The point is overruled.

The judgment of the trial court in awarding the Plaintiff his damages and which denied Phillips Pipeline Company any right of indemnification from Gulf Oil Company is affirmed. We reverse that part of the judgment which awarded a take-nothing judgment in favor of Three Way Constructors, Inc., as to Phillips Pipeline's cross-action for indemnity, and as to that part of the judgment we order a severance of the cause and a remand to the trial court for a new trial.