DONNELLEY MARKETING, Appellant,

v.

LIONEL SOSA, INC., D/B/A Sosa & Associates, Appellee.

No. 13–86–091–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Sept. 30, 1986.

Ross H. Hemphill, Jill Hall, Dallas, for appellant.

Joseph Casseb, San Antonio, for appellee.

Before UTTER, KENNEDY and SEERDEN, JJ.

#### OPINION

UTTER, Justice.

Lionel Sosa, Inc., d/b/a Sosa & Associates (Sosa), appellee, brought suit against Donnelley Marketing (Donnelley), appellant, alleging causes of action based upon the Texas Deceptive Trade Practices Act (DTPA),[1] breach of contract, breach of warranty, negligence, and gross negligence. The jury found in favor of Sosa on all liability issues and the trial court entered a

judgment that Sosa recover $134,534.38, court costs, and attorney's fees. We reverse and render in part, reform the judgment, and as reformed, affirm in part.

Sosa is a marketing-advertising agency, specializing in the Hispanic market. National List Services, a division of Donnelley, is a provider of direct-mail marketing information services. In short, Donnelley compiles lists of names and addresses of people, tailor-made to a client's marketing plan. Sosa's client, Hyram Walker, manufacturer of the liquor Canadian Club, desired to "raise awareness for Canadian Club" among the Hispanic population of the United States. The plan was to mail a bilingual recipe book directly to Hispanic households. Sosa hired Donnelley to compile the list. Sosa contended that it ordered a list of Hispanic names only. It is undisputed that 66% of the names in the list actually supplied to Sosa were non-Hispanic names. Ernest Bromley, director of marketing research for Sosa, testified that he placed "an order for Hispanic names in Los Angeles and Miami, they were to have household incomes of twenty-five thousand or more [and] they were to live in areas of Hispanic concentration 25% percent or more...." What Sosa got was a general list of names from areas in which Hispanics make up 25% of the population.

Thomas Geis, a sales account coordinator for Donnelley, took this particular order from Bromley. Geis testified that he explained two options for selecting Hispanic areas. One option was to compile a general list of names from certain selected Hispanic areas from the 1980 census data. The other option was to specifically select Hispanic surnames. Bromley testified that he was never informed of these two options and that he clearly indicated to Geis that he desired a list of exclusively Hispanic names from areas of 25% Hispanic population density.

Before the computer tapes containing the names were sent out, Sosa received two "Order Specifications/Acknowledgment"

---

1. TEX.BUS. & COMM.CODE ANN. § 17.41 (Vernon Supp.1986).

forms. Bromley testified that he read the forms and was satisfied that they reflected the order which he placed. Sosa's expert, Carl Rove, is the president of his own direct marketing firm in Austin. He testified about the computer terms and abbreviations used in Donnelley's Order Specifications/Acknowledgment forms. In his opinion, the order form acknowledged an order for "households with income of $25,000.00 or more who are Hispanic in areas where the concentration of Hispanics was twenty-five percent of the population or greater." He also testified that the form is subject to more than one interpretation.

Donnelley has raised thirty points of error, many of which are duplicative and multifarious. However, due to our determination of the nature of this case and our disposition of certain points of error we find it unnecessary to address the majority of Donnelley's points of error. We have reorganized the controlling issues.

Twenty separate special issues were submitted to the jury encompassing nine distinct DTPA violations. Donnelley's points of error sixteen through thirty challenge the submission of and the jury's answers to these DTPA issues. However, in light of our disposition of points of error 13, 14, and 15, we find it unnecessary to address them. TEX.R.CIV.P. 451.

By points of error thirteen, fourteen, and fifteen, Donnelley challenges the legal sufficiency of the evidence to support the submission of and the jury's answer to Special Issue 31. Special Issue 31 asked the jury to award damages suffered by Sosa as a result of the DTPA violations previously found to have been committed by Donnelley. By point of error thirteen, Donnelley contends that Special Issue 31 contained "an erroneous and improper standard for measuring damages." Special Issue 31 read as follows:

> What sum of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiff, Sosa & Associates, for damages sustained as a result of the actions of defendant, Donnelley Marketing?

Donnelley objected to the submission of this special issue on the basis that the phrase "actual damages" should have been included in the issue instead of just "damages." Donnelley now argues that "as phrased the issue was so broad and general that it permitted the jury to speculate and find losses not pleaded or supported by any competent evidence." Donnelley's original objection to the court's charge was, "the word 'actual' should be in front of damages on line three," and that " 'actual' is used in the code." In the court below, Donnelley made no attempt at all to inform the trial court of its *grounds* for including the word "actual," which it now advances on appeal. In its brief, Donnelley argues at length its reasons why the word "actual" should have been included in Special Issue 31. The purpose of making objections to the court's charge is to give the trial court an opportunity to correct any errors in the charge. "A party objecting to a charge must point out *distinctly* the matter to which he objects and the grounds of his objection." TEX.R.CIV.P. 274 [emphasis ours]. Failure to make an objection specifically pointing out the matter complained of and the grounds of the objection results in a waiver of that complaint on appeal. *Monsanto Co. v. Milam*, 494 S.W.2d 534, 537 (Tex.1973). Donnelley did not preserve error on this point because its objection did not "make it apparent that the trial court, though fully cognizant of the ground of complaint, nevertheless chose to submit the issue." *Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 334 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). Furthermore, Donnelley did not request an instruction or definition of the term "actual damages" in order to explain the difference between "actual damages" and the general term "damages." Even had the trial court been made "fully cognizant" of the grounds of Donnelley's complaint, we find no error in failing to include the word "actual" in Special Issue 31 in light of the failure to request an appropri-

ate explanatory instruction to assist the jury. Point of error thirteen is overruled.

■ By point of error fourteen, Donnelley contends that Special Issue 31 "failed to properly instruct the jury as to the elements of damages to be considered." The trial court did not submit *any* instruction advising the jury on the proper measure of damages. Nor was it requested to do so by either party. In its brief under this point, Donnelley argues that the jury should have been instructed to award damages based upon "the out-of-pocket rule" or "the loss of bargain rule," whichever is greater. Donnelley also argues that the court should have submitted two special issues inquiring of damages under each rule. We do not reach the merits of Donnelley's fourteenth point of error because we find that Donnelley has waived the right to complain of the lack of any such instructions due to its failure to object on these grounds and tender written instructions on the proper measure of damages in substantially correct wording. *Texas Power & Light Co. v. Barnhill,* 639 S.W.2d at 334–35. Point of error fourteen is overruled.

By point of error number fifteen, Donnelley contends that there is no evidence to support the submission of, or the jury's answer to, Special Issue 31. By its answer to Special Issue 31, the jury awarded $134,-534.38 as "damages sustained as a result of the actions [DTPA violations found] of ... Donnelley."

■ Testimonial and documentary evidence was presented showing that Sosa suffered damages in the amount of $59,-534.38. Although there is evidence to support the submission of the issue, there is no evidence to support an award in excess of $59,534.38. Point of error fifteen is sustained.

■ By points of error two and four, Donnelley challenges the legal sufficiency of the evidence to support the submission of Special Issues 6, 7, 8, 9, 10, 12, and 13. By point of error three, Donnelley challenges the factual sufficiency of the evi-

dence to support the jury's answers to Special Issues 6, 7, 8, 9, 10, and 13. These special issues were submitted to the jury on theories of negligence and gross negligence. By its answers, the jury found that Donnelley was negligent in compiling the list and that such negligence was gross negligence. The jury awarded $59,534.38 as damages and $75,000.00 as exemplary damages. We agree with Donnelley that there is no evidence to support the submission of these special issues. We find that this matter is controlled by *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex. 1986). The issue in *Reed* was whether an independent tort existed to support an award of exemplary damages. *Id.* at 617. The Reeds sued Jim Walter Homes seeking damages arising out of the sale and construction of their house. The jury found that Jim Walter Homes had breached the warranty of good workmanship and was grossly negligent in the supervision of the construction of the house. The jury found actual damages, additional damages under the DTPA, exemplary damages, and attorney's fees. The Supreme Court stated that in order to determine the type of action that is brought, "[w]e must look to the substance of the cause of action and not necessarily the manner in which it was pleaded." *Id.* at 617–18. The Supreme Court went on to say:

> The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. [citations omitted] The Reeds' injury was that the house they were promised and paid for was not the house they received. This can only be characterized as a breach of contract, and breach of contract cannot support recovery of exemplary damages. [citations omitted] ... Gross negligence in the breach of contract will not entitle an injured party to exemplary damages because even an intentional breach will not. [citations omitted] ...
>
> To support an award of exemplary damages in this case, the plaintiff must

prove a distinct tortious injury with actual damages. [citations omitted]

*Id.* at 618.

In the case before us, Sosa's injury was that the list they were promised and paid for was not the list they received. In the words of the Supreme Court, "this can only be characterized as a breach of contract, and breach of contract cannot support recovery of exemplary damages." *Id.* Sosa has not proven a distinct tortious injury with resulting actual damages. We, therefore, sustain points of error two, three, and four.

By points of error five, six, seven, and eight, Donnelley contends that the trial court erred as a matter of law in submitting Special Issues 3, 4, and 5 because such issues did not submit the proper measure of damages, that the evidence is factually insufficient to support the jury's answers, and that liability was limited by a disclaimer. Donnelley does not contest the jury's findings of breach of contract in response to Special Issues 1 and 2. Special Issue 3 requested that the jury find the difference in value of the list as it was ordered and as it was supplied. They found $4,145.76. Special Issue 4 asked the jury to find the amount of expenses incurred by Sosa as a result of utilizing the list. They found $59,534.38. Special Issue 5 asked the jury to find the amount of lost profits sustained by Sosa as a result of using the list. They found $4,614.39.

■ Donnelley objected to Special Issues 3, 4, and 5 on the basis that recovery is precluded or limited by a disclaimer of warranty printed on the backside of the Order Specifications/Acknowledgment forms. As to Special Issues 3 and 4, Donnelley did not object to their submission on the basis that the wrong measure of damages was being submitted. Since its trial objection does not comport with its point of error raised on appeal, nothing is preserved for review. *See First City Bank-Farmers Branch v. Guex,* 659 S.W.2d 734 (Tex.App.—Dallas 1983), *aff'd,* 677 S.W.2d 25 (Tex.1984).

■ By point of error number seven, Donnelley contends that the trial court erred as a matter of law in submitting Special Issue 5 because the issue did not submit the proper measure of damages and also that there was insufficient evidence to support the jury's answer to it. Special Issue 5 requested that the jury find the amount of lost profits sustained by Sosa as a result of using the list. Lost profits are recoverable in a breach of contract action. *Texas Power & Light Co. v. Barnhill,* 639 S.W.2d at 336. Bromley testified that the profit that Sosa would have made on the Hyram Walker/Canadian Club project was $4,614.39. This was the same amount of lost profits that the jury found Sosa sustained as a result of utilizing the list supplied by Donnelley. Point of error number seven is overruled.

As mentioned earlier, Donnelley also argues, under points of error 5, 6, and 8, that a "Disclaimer of Warranty" printed on the backside of its Order Specifications/Acknowledgment forms limits its liability to the price of the list. The Disclaimer of Warranty, in pertinent part, reads as follows:

> DONNELLEY MARKETING HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, AS TO THE FITNESS OF THE LIST(S) SUPPLIED HEREUNDER FOR ANY PARTICULAR USE OR PURPOSE. Donnelley Marketing's liability hereunder shall in no event exceed the price of the list(s) supplied hereunder.

■ Donnelley's argument is that this Disclaimer of Warranty, purporting to limit their liability to the purchase price of the list, also operates to limit their liability under a breach of contract cause of action. An action for breach of warranty and an action for breach of contract are separate and distinct causes of action. Although a disclaimer of warranty may be effective to preclude or limit one's liability under a breach of warranty cause of action [2] it does

---

**2.** We also note that Donnelley's disclaimer of warranty is not effective to exclude or modify the implied warranty of mercantibility because it does not mention the word "mercantibility."

not so operate under a breach of contract cause of action. A warranty warrants that the goods contracted for will perform in a promised manner or will be of a certain quality. A warranty presupposes that the goods contracted for are the goods received. When the goods ordered and received fail to live up to the promises made regarding their performance, a breach of warranty action will lie. On the other hand, a breach of contract action lies when the goods ordered are not the goods received.

■ We realize that it is often difficult to distinguish between the two types of actions. In determining which action lies, we must look to the underlying facts. In the case before us, the list ordered was not the list received, thereby giving rise to a breach of contract action. Had Donnelley provided the list that the jury found Sosa had ordered, and had Donnelley made some type of affirmation or promise as to the performance or use of the list, then only a breach of warranty action would lie. We find that the "Disclaimer of Warranty" does not operate to limit Donnelley's liability under a breach of contract action. Points of error five, six, and eight are overruled.

Sosa established that the total amount of actual damages sustained as a result of using the list supplied by Donnelley was $59,534.38. This figure included the amount of $4,145.76 which the jury found as the difference in the value of the list as ordered and as supplied (Special Issue 3), and $4,614.39, the amount of lost profits which Sosa expected to make (Special Issue 5). The judgment of the trial court provided that Sosa recover from Donnelley "the amount of $134,534.38, plus pre-judgment interest on $59,534.38 . . . ." This judgment obviously reflects the jury's award of $75,-000.00 in punitive damages as well as the jury's finding of actual damages of $59,-534.38. Since we have determined that the award of $75,000.00 in punitive damages cannot stand, and that there is no evidence to support the jury's finding of damages of

*See* TEX.BUS. & COMM.CODE ANN. § 2.316(b)

$134,534.38 as a result of DTPA violations, the judgment of the trial court is REFORMED to delete $75,000.00 and reflect that Sosa have and recover from Donnelley the amount of $59,534.38 plus pre-judgment interest at the rate of 6% from January 1, 1984 to the date of the judgment. Donnelley does not challenge the award of the attorney's fees.

By points of error one, nine, ten and twelve, Donnelley challenges the admissibility of certain exhibits. By its first point of error, Donnelley contends that the trial court erred in admitting into evidence plaintiff's exhibit no. 24. Plaintiff's exhibit no. 24 is a credit memo issued from Sosa to Hyram Walker crediting Hyram Walker's account in the amount of $59,534.38. The credit memo states "[t]o reimburse Hyram Walker, Inc., for 1983 Canadian Club recipe book mailing." The credit memo is dated April 26, 1985, a Friday. The trial of this case began on Monday, April 29, 1985.

■ Donnelley objected to the admission of the credit memo on the base that it is "hearsay," "self-serving," "ex parte," and "highly irregular." Donnelley devotes much of its argument under this point of error to showing that Sosa did not lay a proper predicate for the admission of the credit memo under the business record exception, TEX.R.EVID. 803(6). However, at trial, it did not object on the basis of lack of proper predicate. Even if we were to construe Donnelley's general objections to mean that "the source of information or the method of circumstances of preparation indicate lack of trustworthiness," TEX.R. EVID. 803(6), we find that the trial court did not abuse its discretion in admitting the credit memo into evidence. The fact that the credit memo was dated and was issued three days before the commencement of trial goes to the credibility which the jury was at liberty to give such evidence. Further, evidence of a credit for $59,534.38 came in unobjected to at the end of Mr. Sosa's testimony. Point of error number one is overruled.

(Vernon 1968).

By point of error number nine, Donnelley contends that it was error to admit plaintiff's exhibit no. 3 because it was immaterial, irrelevant and inadmissible. Donnelley's objections at trial were that the exhibit was irrelevant and self-serving. Therefore, the only complaint preserved for appeal is that the exhibit is irrelevant. *See Clark v. Walker-Kurth Lumber Co.,* 689 S.W.2d 275 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

In order for evidence to be admissible over an objection that it is irrelevant, the evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. Although we do not have the benefit of the inclusion of plaintiff's exhibit no. 3 in the record, the testimony has established that the exhibit is a chart explaining Sosa's "acculturation influence group theory and process." Essentially, Sosa has divided the Hispanic population into three different levels. The first level, AIG 1, denotes a segment of the Hispanic population which has predominantly retained their Spanish culture and has not become assimilated into the English language and culture. AIG 2 Hispanics are persons who are bilingual and "vacillate" from one culture to the other. AIG 3 persons "are people who have been here many generations and pretty much have forgotten the Spanish language and culture." Each of the three levels is coordinated with a certain percentage of Hispanic density in different areas.

By first determining which AIG group Sosa wished to target for the direct-mail project, they could then decide which area of Hispanic density they would want the list of names compiled from. This evidence was relevant to show that Sosa sought and ordered a list comprised of exclusively Hispanic names, and further, to show that any references to percentages or densities of Hispanic persons pertained to Hispanics within a given area and not to a percentage of Hispanic names on the list. Point of error number nine is overruled.

By point of error number ten, Donnelley contends that it was error to admit plaintiff's exhibit nos. 25, 26, 27, 28, 29 and 30 because they are "irrelevant and highly prejudicial." These exhibits are acknowledgment/confirmation forms from six different list supply companies. The director of National List Services, Barbara Daubert, testified that the language and computer terms used on Donnelley's Order Specifications/Acknowledgment form is "common industrial language" and is "standard in the trade." Plaintiff's exhibits 25 through 30 were admissible for the purpose of rebutting this testimony and showing the language used in Donnelley's Order Specifications/Acknowledgment forms was not "common industrial language." Point of error number ten is overruled.

By point of error number twelve, Donnelley contends that it was error to admit plaintiff's exhibit no. 9 because "it was hearsay ... and did not approximate actual costs incurred by plaintiff." Plaintiff's exhibit no. 9 is entitled "Canadian Club Recipe Book Restitution." It is a breakdown of all the costs attributed to the Hyram Walker/Canadian Club Recipe Book mailing project. Donnelley objected to the admission of plaintiff's exhibit no. 9, stating "we object to anything but actual costs that have been paid by Sosa as being in evidence at this time, your Honor." Donnelley did not object to the admission of the exhibit on the basis that it was hearsay, therefore, it is limited to its "actual costs" objection. The court then stated "I haven't seen the exhibit and nothing has been established about that [the actual costs]." The objection was then overruled. No further objection was lodged by Donnelley. We find that Donnelley has waived any complaint as to the admissibility of plaintiff's exhibit no. 9 by failing to lodge a proper and timely objection. Point of error number twelve is overruled.

By point of error number eleven, Donnelley contends that the trial court "erred in accepting a verdict of the jury which was not a unanimous verdict as Special Issue no. 17 was submitted on a separate sheet,

not part of the Court's charge, and the certificate thereof that was signed by ten jurors or by the same ten jurors who signed the main certificate." [sic] We interpret Donnelley's argument to be that since Special Issue no. 17 was submitted on a separate sheet of paper, then in order for it to be considered as the verdict of the jury, each juror had to sign his or her name on Special Issue no. 17. Special Issue no. 17 was originally submitted to the jury as follows:

Do you find from a preponderance of the evidence that the agreement between the parties conferred or involved rights, remedies, or obligations it did not have or involve, or which were prohibited by law?

Sometime during its deliberations, the jury requested that the trial court "please rephrase Special Issue no. 17 as we do not understand it." The trial court then submitted the following Special Issue no. 17 "in lieu of" the Special Issue no. 17 originally submitted:

Do you find from a preponderance of the evidence that Defendant, Donnelley Marketing, represented to Plaintiff, Sosa & Associates, that the agreement between the parties conferred or involved rights, remedies, or obligations which it did not have or involve or which were prohibited by law?

Since the trial court submitted the second version of Special Issue no. 17 "in lieu of" the original Special Issue no. 17 it then became a part of the court's charge. Ten jurors signed the certificate. We have found nothing in the record to indicate that the answer written in the blank in response to the substituted Special Issue no. 17 is not in fact the true verdict of the jury. Point of error number eleven is overruled.

The judgment of the trial court is REVERSED as to the negligence and gross negligence claims and as to the award of exemplary damages, and RENDERED that Sosa take nothing by those claims, and REFORMED to delete $75,000.00 from the award, and as reformed is AFFIRMED as to the award of actual damages of $59,-534.38, plus prejudgment and post-judg-ment interest, and attorney's fees. Costs of the appeal are assessed one-half against appellant, and one-half against appellee.

SEERDEN, J., not participating.