Lavon **ROY** and Robert
E. **Roy**, Appellants,

v.

**HOWARD–GLENDALE FUNERAL
HOME**, Appellee.

No. 01–90–00321–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 3, 1991.

Rehearing Denied Nov. 14, 1991.

William J. Eggleston, Houston, for appellants.

Jack McKinley, Kathleen Walsh Beirne, Houston, Michael Miller, Galveston, for appellee.

Before DUGGAN, MIRABAL and O'CONNOR, JJ.

## OPINION

MIRABAL, Justice.

The Court's opinion of September 26, 1991, is withdrawn, and the following is substituted therefor.

Lavon Roy and her husband, Robert E. Roy ("the Roys"), appeal a take-nothing judgment in a suit for damages arising out of the purchase of a burial vault and funeral services from appellee, Howard–Glendale Funeral Home ("Howard–Glendale").

Bertha Carson died in 1971. Her only child, Lavon Roy, contacted Howard–Glendale and made arrangements for the funeral and burial services. Lavon and her husband, Robert Roy, purchased a white, pearlized, "permaseal" casket, plus a burial vault, as her mother's final resting place. Lavon made it known to the Howard–Glendale personnel that she wanted a waterproof casket and vault.

The burial was conducted without incident. In 1987, however, a problem developed involving the cemetery where Lavon's mother and, later, her father were buried. As a result, Lavon wanted her parents' remains moved to another cemetery. She contacted Howard–Glendale to assist her in the disinterment and reburial. The disinterment resulted in the discovery of the failure of the vault containing Lavon's mother's remains. When the cemetery crew attempted to remove the vault from the ground, the lid came off, revealing a vault full of water. The casket interior was checked and appeared to be dry, even though the entire exterior of the casket was stained from the water. Mrs. Roy's mother's vault was replaced with a new one; the vault manufacturing company provided the replacement vault to the Roys at no charge. The remains of Mrs. Roy's parents were reburied at another cemetery.

The Roys sued Howard–Glendale and its parent corporation, Service Corporation International, (SCI) alleging breach of contract, breach of the duty of good faith and fair dealing, and breach of warranty, as well as negligence, fraud, misrepresentation, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act. The suit sought recovery of $3.5 million in actual damages, plus at least $20 million in exemplary damages, and attorney's fees.

The trial judge granted a directed verdict for SCI, and a partial directed verdict for Howard–Glendale on the claims of breach of fiduciary duty and breach of the duty of good faith and fair dealing. Jury questions were submitted on the remainder of the case against Howard–Glendale. Following are the jury's unanimous answers to the relevant questions:

1. In 1971, did Howard–Glendale Funeral Home make any express warranty about the outside container for Bertha Carson's grave?

   Answer: NO

4. In providing services for Bertha Carson's funeral, was Howard–Glendale Funeral Home negligent?

   Answer: NO

6. In 1971, did Howard–Glendale Funeral Home commit fraud on Lavon Roy?

Answer: NO

8. In 1987, did Howard–Glendale Funeral Home make any misrepresentation that was a producing cause of damage to Lavon Roy?

Answer: NO

Based on these jury findings, the trial court signed a take-nothing judgment on December 19, 1989.

In point of error one, the Roys assert the trial court erred in refusing to submit the Roys' requested jury questions regarding breach of contract. The instructions and questions the Roys requested were the following:

#### Question Number 37

You are instructed that a breach of contract is an unjustified failure of one of the parties to the agreement to perform all or any part of what is promised in the agreement. You are further instructed that you must find that the breach was material. A breach of contract is material if the breach is of sufficient significance that a reasonable person would attach importance to it in considering whether a party has substantially performed its obligation under the contract. Did Howard–Glendale Funeral Home commit a material breach of the contract which caused damages to Lavon Roy and/or Robert E. Roy?

ANSWER: YES ___.
NO ___.

#### Question Number 38

If you answered "Yes" to Question Number 37, answer the following and if your answer was "No" to Question Number 37, do not answer the following.

What sum of money, if paid now in cash, would fairly and reasonably compensate Lavon Roy and/or Robert E. Roy for their damages, if any, caused by a breach of the contract?

Answer in dollars and cents, if any, for each of the parties listed below.

(a) Lavon Roy:     $_____.
(b) Robert E. Roy: $_____.

■ A trial court has broad discretion in submitting jury questions. *Mobil Chemical v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). This discretion is subject only to the requirement that disputed issues must be fairly submitted to the jury for determination. *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486, 489 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); TEX.R.CIV.P. 277. The trial court's refusal to submit a requested issue is error if there is any probative evidence to support an affirmative finding on the issue. *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex.1985); *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977); *4M Linen & Uniform v. W.P. Ballard & Co.*, 793 S.W.2d 320, 326 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Even if the evidence is insufficient to sustain an affirmative finding, the trial court is obligated to submit the question if the evidence amounts to more than a scintilla. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965); *Essex Crane Rental Corp. v. Striland Constr. Co.*, 753 S.W.2d 751, 755 (Tex.App.—Dallas 1988, writ denied).

■ To determine if a trial court has abused its discretion in refusing to submit requested questions, the reviewing court looks at the evidence as if the trial court had instructed a verdict. *Phillips Pipeline Co. v. Richardson*, 680 S.W.2d 43, 48 (Tex.App.—El Paso 1984, no writ). The evidence is considered in favor of the party whose questions were refused, and if there is conflicting probative evidence in the record, the questions are for determination by the jury. *Id.*

Howard–Glendale contends the question submitted by the trial court on *express warranty* encompassed the Roys' contract question, and submission of the contract question separately would have been superfluous or confusing to the jury.

In their last-filed amended petition, the Roys described the five causes of action they were asserting: (1) misrepresentation; (2) breach of warranty and breach of contract; (3) breach of fiduciary duty and negligence; (4) breach of the duty of good

faith and fair dealing; and (5) violation of the deceptive trade practices act. The Roys set out their cause of action for "breach of warranty and breach of contract" as follows:

### Breach of Warranty and Breach of Contract

18. Plaintiffs hereby incorporate paragraphs 2 through 14 above.

19. In addition to the foregoing, Plaintiffs allege that Defendants expressly warranted orally, in writing, and impliedly that the funeral services for Bertha Carson which Defendants would provide would include a top of the line, waterproof Doric vault with a fiberglass lining, that the vault would be fit for the purposes intended and would remain so for fifty (50) years. Pursuant thereto, the attached written contract was executed.

20. Plaintiffs would show that these warranties were breached in that the container and the services actually provided were not as warranted, but were of substantially lesser quality, in that the outside container was not a top of the line waterproof Doric vault, contained no fiberglass whatsoever and was full of water approximately sixteen (16) years after burial.

21. Despite Plaintiffs' full performance, Defendants violated the above referenced obligations and promises under the contract, thereby breaching said contract and proximately causing the damages hereinafter alleged.

Under its pleadings, the Roys clearly alleged that Howard–Glendale breached its contract *because* it breached its warranties that:

1. The vault would be a top of the line, waterproof Doric vault;

2. the vault would contain a fiberglass lining; and

3. the vault would remain fit for the purposes intended for 50 years.

The written contract between the Roys and Howard–Glendale, introduced into evidence, describes the agreed on vault as: "Outside enclosure, Inv. # 307." Its cost was $220. The burial card check list identifies the ordered outside container with the words "C vault-Doric—Gold with Eastern Star Emblem." There is no dispute that the letter "C" meant "concrete" to everyone involved. There was a major dispute, however, about the meaning of "Doric." There are "Doric" companies and "Doric" products. The record shows that "a Doric" could be any container, vault or box manufactured by the local Doric company. It could also mean the unique "waterproof," fiberglass-lined, tongue-in-groove vault manufactured by a local franchisee of the National Doric company, the vault that the Roys insist they paid for ("the Doric–Doric"). There was also evidence indicating that "outside enclosure, Inv. # 307" meant the Sentry vault manufactured by the Doric Company. The Sentry vault was sprayed with asphalt on the inside and had a tongue-in-groove lid; it was the next-best quality vault after the "Doric–Doric," and was considered a "middle range" vault.

The original vault, removed from the ground at the time of the disinterment, was destroyed. There was some question raised about whether the chips and remnants the Roys offered as exhibits during trial were actually from the original container.

It is undisputed a vault was contracted for, paid for, and used as an outer enclosure for Mrs. Roy's mother's casket. There is substantial conflict in the evidence about what type of vault the parties intended the contract to cover, and what type of vault was actually put in the ground.

The Roys rely on a Corpus Christi court of appeals case for the propositions: (1) that "a breach of contract action lies when the goods ordered are not the goods received," and (2) that when the goods ordered are the ones that are received, then a breach of warranty action will lie if they "fail to live up to the promises made regarding their performance." *Donnelley Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 604 (Tex.App.—Corpus Christi 1986, no writ). The Roys insist they were entitled to have a jury question submitted on breach of contract, since the evidence

raised the issue of whether the vault ordered was the vault received.

Although *Donnelley* supports the Roys' position, a recent Texas Supreme Court case does not. According to *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (1991) (on motion for rehearing), the Roys have a breach of warranty cause of action, not a breach of contract case. Breach of contract and breach of warranty are not the same cause of action. The remedies for breach of contract are available to a buyer where the seller *fails to make any delivery;* the remedies for breach of warranty are available to a buyer who has received and accepted goods, but discovers they are defective in some manner. *Id.* at 576.

Based on the *Southwestern Bell* case, we hold, since Howard–Glendale delivered a vault to the Roys, which was used for many years, the Roys' claims, that the vault was defective because it was not the vault they ordered and/or that it was defective because it did not perform in the manner warranted, are both breach of warranty claims. Therefore, we hold the trial court did not err in refusing to submit the Roys' requested jury questions regarding breach of contract.

We overrule point of error one.

■ In their second point of error, the Roys assert the trial court erred in refusing to submit the following requested jury questions on breach of the duty of good faith and fair dealing:

### Question Number 39

Did Howard–Glendale Funeral Home fail to act fairly and in good faith in the sale of the outside container to Lavon Roy and Robert E. Roy?
ANSWER: Yes ＿. .
         No ＿.

### Question Number 40

If you answered "Yes" to Question Number 39, answer the following and if your answer was "No" to Question Number 39, do not answer the following.

What sum of money, if paid now in cash, would fairly and reasonably compensate Lavon Roy and/or Robert E. Roy for their damages, if any, which were proximately caused by Howard–Glendale Funeral Home's breach of good faith and fair dealing?
Answer in dollars and cents, if any, with respect to each of the parties listed below.
A. Lavon Roy:    $＿＿.
B. Robert E. Roy: $＿＿.

### Question Number 41

If you answered "Yes" to Question Number 39, answer the following and if your answer was "No" to Question Number 39, do not answer the following.

Was the breach of good faith and fair dealing by Howard–Glendale Funeral Home wanton or with malice? You are instructed that an act of failure to act is maliciously done if prompted and accompanied by ill will, spite, bad or evil motive or grudge.

You are further instructed that something is wantonly done, if done in reckless or callous disregard or conscious indifference to the rights of another.
ANSWER: Yes ＿.
         No ＿.

### Question Number 42

If you answered "Yes" to Question Number 41, answer the following and if your answer was "No" to Question Number 41, do not answer the following.

What sum of money, if paid now in cash, would fairly and reasonably compensate Lavon Roy and/or Robert E. Roy for their damages, if any, which were proximately caused by Howard–Glendale Funeral Home's breach of good faith and fair dealing?
Answer in dollars and cents, if any, with respect to each of the parties listed below.
A. Lavon Roy:    $＿＿.
B. Robert E. Roy: $＿＿.

The Roys acknowledge that if we sustain this point of error, we will be the first

court in Texas to impose a separate, common-law duty of good faith and fair dealing on parties to a funeral services contract.

In response to jury question six, the jury found Howard–Glendale did not commit fraud on Mrs. Roy in 1971. Further, the jury specifically found Howard–Glendale was not even negligent in providing services for the funeral, and that Howard–Glendale did not make any express warranties about the vault.

Since there is no precedent for imposing a common-law duty of good faith and fair dealing in the circumstances presented by this case, we hold the trial court did not abuse its discretion in refusing to submit the requested jury questions. Further, in light of the jury answers to the questions submitted, we hold that, even if the trial court did err, the error was harmless. *See Island Recreation Dev. v. Republic of Texas Sav.,* 710 S.W.2d 551, 555 (Tex.1986) (error in the jury charge is reversible only if, when viewed in light of the totality of the circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated to cause and probably did cause rendition of an improper judgement.); *see also Trevino v. Brookhill Capital Resources,* 782 S.W.2d 279, 283 (Tex.App.—Houston [1st Dist.] 1989, writ denied); Tex.R.App.P. 81.

We overrule point of error two.

■ In their third point of error, the Roys assert that the jury's failure to find Howard–Glendale made an express warranty about the burial vault is contrary to the great weight and preponderance of the evidence.

When a jury negatively answers a special issue on which the appellant has the burden of proof, the proper standard for review of a factual sufficiency point is "great weight and preponderance," and the courts of appeals are to exercise their fact jurisdiction only to prevent a manifestly unjust result. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986); *Ritchey v.*

*Crawford,* 734 S.W.2d 85, 87 (Tex.App.—Houston [1st Dist.] 1987, no writ). To assess the challenge to the jury's answer, this Court must examine the entire record and, after considering and weighing all of the evidence, set the verdict aside only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ).

■ The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). This Court may not substitute its opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988). The Supreme Court has admonished the courts of appeals to be mindful that the preponderance of the evidence did not convince the jury, and reversal is warranted only where the great weight of the evidence supports an affirmative answer. *Id.*

The jury was provided the following definition of express warranty:

An express warranty is any affirmation of fact or promise made that relates to the thing being sold and becomes part of the basis of the agreement. It is not necessary that formal words such as "warrant" or "guarantee" be used or that there be a specific intent to make a warranty.[1]

The jury question, and answer, complained of are:

1. Question: In 1971, did Howard–Glendale Funeral Home make any express warranty about the outside container for Bertha Carson's grave?

   Answer: NO

---

1. This definition essentially tracks the language of Tex.Bus. & Com.Code Ann. § 2.313(a)(1) (Tex. UCC) (Vernon 1968).

In order to recover for breach of an express warranty, the Roys had to prove:

(1) an *express* affirmation of fact or promise *by Harold–Glendale* relating to the vault;

(2) that such affirmation or promise became a part of the basis of the bargain;

(3) that the Roys relied upon said affirmation of fact or promise;

(4) that the vault failed to comply with the express warranty;

(5) that the Roys were injured by such failure of the vault to comply with the express warranty; and

(6) that such failure was the proximate cause of the Roys' injuries.

*Morris v. Adolf Coors Co.*, 735 S.W.2d 578, 586 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.); *General Supply & Equip. Co., Inc. v. Phillips*, 490 S.W.2d 913, 917 (Tex.Civ. App.—Tyler 1972, writ ref'd n.r.e.).

■ The Roys argue that the evidence clearly shows Howard–Glendale expressly warranted the vault the Roys ordered was "guaranteed to be waterproof for 50 years." Therefore, the Roys submit, the jury's failure to find Howard–Glendale made an express warranty that the vault would be "waterproof" is not supported by the evidence.

There is considerable testimony from both sides about what was and/or was not said about the vault. It is clear from all the testimony that the Roys were shown several small models or "cutaways" of the various vaults available. The warranty from the manufacturer was also explained to them.

The witnesses for Howard–Glendale, the expert witness for the Roys, who was a funeral director, and the vault manufacturer, all testified that funeral homes do not warrant the caskets or the vaults they sell; they are merely dealers. The warranties come only from the manufacturers.

The evidence required the jury's determination of the credibility and weight to be given to the witnesses' testimony on what was or was not said. We hold the evidence is factually sufficient to support the jury's finding.

We overrule point of error three.

We affirm the judgment.