Melissa LOVE, Appellant,

v.

**D. HOUSTON, INC., d/b/a Treasures, Appellee.**

No. 01–98–00594–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 2000.

Rehearing Overruled Oct. 6, 2000.

---

1. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

David E. Chapin, Houston, for Appellant.

* The Honorable Frank C. Price, former Justice, Court of Appeals for the First District of Texas at Houston, participating by assignment.

Michael Wayne Blaise, Diane M. Guariglia, Joseph Todd Trombley, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices TAFT and PRICE.*

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

Appellant, Melissa Love, brings this appeal after a summary judgment was granted in favor of appellee, Treasures. The issue is whether the Dram Shop Act precludes an employer's liability for an independent contractor's common law claims. We reverse and remand.

### Facts and Procedural History

After completing her day shift as a waitress at Treasures around 7:45 p.m., Love remained to work as a topless dancer. When Love began her shift as a topless dancer, her employment status changed from an employee to an independent contractor. During her shift as a dancer, Love consumed alcoholic beverages served to her by Treasures. Love left Treasures at approximately 1:00 a.m. and was involved in a one-car accident on her way home. Love was then transported to Hermann Hospital, where a blood alcohol test revealed her blood alcohol level was .225.[1]

As a result of her injuries, Love sued Treasures asserting causes of action under Chapter Two of the Texas Alcoholic Beverage Code (the "Dram Shop Act"), as well as common law negligence and gross negligence. Treasures filed two separate

---

1. The blood alcohol test was performed by the hospital at 4:00 a.m.

motions for summary judgment. First, Treasures asserted it was entitled to summary judgment on Love's Dram Shop cause of action based on the "trained-server" exception.[2] Additionally, in its second motion for summary judgment, Treasures asserted Love's common law claims for negligence and gross negligence were barred because the Dram Shop Act provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.[3]

The trial court granted summary judgment in favor of Treasures on Love's Dram Shop claims and, in a separate order, granted Treasures' motion for summary judgment on Love's negligence and gross negligence claims. On appeal, Love challenges only the second summary judgment.

### Summary Judgment Standard of Review

■■■ Summary judgment is proper only when the movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Randall's Food Mkts.,* 891 S.W.2d at 644. We will take all evidence favorable to the nonmovant as true. *Id.*

### The Dram Shop Act

Section 2.03 of the Dram Shop Act provides:

> The liability of providers under this chapter for the actions of their *customers, members, or guests* who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages. This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter. This chapter provides the *exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.*

TEX. ALCO. BEV.CODE § 2.03 (Vernon 1995) (emphasis added).

■■ This section governs the liability of "providers" of alcoholic beverages. A provider is a person who sells or serves alcoholic beverages under authority of a license or permit, or who otherwise sells alcoholic beverages to an individual. TEX. ALCO. BEV.CODE § 2.01 (Vernon 1995). As such, the statute applies to employers who serve or sell alcoholic beverages to guests or employees.

### Discussion

We must address whether the Dram Shop Act precludes Treasures' liability for Love's common law negligence and gross negligence claims. Specifically, we must decide whether Love's status as an independent contractor means that she should be treated differently from an employee. To do so, we must examine several cases holding that the Dram Shop Act is not

---

**2.** TEX. ALCO. BEV.CODE ANN § 106.14(a) provides:

> ... the actions of an employee shall not be attributable to the employer if: (1) the employer requires its employees to attend a commission-approved seller training program; (2) the employee has actually attended such a training program; and (3) the employer has not directly or indirectly encouraged the employee to violate such law.

**3.** TEX. ALCO. BEV.CODE ANN. § 2.03 (Vernon 1995).

necessarily the exclusive remedy for an employee whose employer serves alcoholic beverages.

In *Smith v. Merritt*, 940 S.W.2d 602, 604 (Tex.1997), the Supreme Court addressed whether a social host was liable under the common law for injuries resulting from the host's provision of alcohol to a 19–year–old guest. The Court declined to expand the common law to include those claims. *Id.* at 605. The Court held, with regard to the Dram Shop Act, "[the] purpose of the legislative enactment is clear." *Id.* "That chapter 'provides the exclusive cause of action for providing alcoholic beverages to a person 18 years of age or older.'" *Id.*

In *Merritt*, the Supreme Court relied on *Graff v. Beard*, 858 S.W.2d 918 (Tex.1993). In *Graff*, the Court held that a social host has no common law duty to avoid making alcohol available to an intoxicated adult guest whom the host knew would be driving. *Id.* at 921–22. The Court stated that determining whether a common law duty is owed involves complex considerations of public policy. *Id.* at 920. The Court noted several factors to be considered, including the risk, foreseeability, and the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.*

In *Graff*, the Court relied on *Greater Houston Transportation v. Phillips*, 801 S.W.2d 523 (Tex.1990). There, it found, generally, there is no duty to control the conduct of third parties. *Id.* at 525. It noted, the general rule, however, does not apply when a special relationship exists between the actor and the third person. Where a special relationship exists, it imposes a duty upon the actor to control the third person's conduct. *Id.* Such special relationships include employer employee and independent contractor contractee.

*Id.* In order to predicate liability, it must be shown that the employer controlled the work of the employee or contractor and knew of the employee or contractor's incapacitation. *Id.*

■ *Merritt*, *Graff*, and *Greater Houston Transportation v. Phillips*, lead this Court to conclude the Dram Shop Act does *not* preclude liability for a commercial server for an independent contractor's common law actions. Because a special relationship exists between the commercial server and the independent contractor, a duty is imposed upon the commercial server to control the independent contractor's conduct. *Greater Houston Transp.*, 801 S.W.2d at 525.

Under the common law, an employer who asserts control over an intoxicated *employee* assumes a duty to exercise reasonable care and control to prevent the employee from causing harm to others. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 310–11 (Tex.1983). As such, the Supreme Court has held an employer was liable for injuries incurred in an accident caused by an intoxicated employee who was escorted to the company parking lot and sent home by his supervisor because the supervisor determined that he was too drunk to work. *Id.* This duty was extended to include preventing the incapacitated employee from causing an unreasonable risk of harm to *himself*, as well as others. *Spruiell v. Schlumberger Ltd.*, 809 S.W.2d 935, 937, 939–40 (Tex.App.—Texarkana 1991, no writ) (emphasis added).

Appellant asks this Court to extend an employer's duty to prevent an unreasonable risk of harm by employees to themselves or others, to independent contractors. We hold the reasoning also applies to independent contractors. Because Love was an independent contractor of Treasures, a special relationship existed. *Otis,*

668 S.W.2d at 309. This special relationship imposed a duty upon Treasures to control Love's conduct. *Id.*

Courts, however, have been unwilling to extend this duty to situations in which the employer did not know of the employee's incapacitated condition or did not exercise control over the employee. *Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 451 (Tex.App.—Houston [14th Dist.] 1996, no writ). In *Estate of Catlin*, the court held an employer had no duty to control actions of an employee who became drunk at a fish fry on company property because the employer did not know of the employee's condition and did not exercise control over him. *Id.*

*Did Treasures Know of Love's Intoxication?*

Dr. Alfred E. Leiser stated in his deposition that with a blood alcohol level of .225, Love would have exhibited clinical symptoms of intoxication, such as disorientation, impaired balance, lack of muscular coordination, a staggering gait, and slurred speech. He also testified that since Love's blood alcohol level was not taken until three or four hours after she left the club, she would have had an even greater lack of muscular coordination, and would have had trouble standing or walking, when still at the club.

To the contrary, Frank Donics, Treasures' manager, stated in his deposition that he did not notice that Love was intoxicated when he spoke to her between 10:30 and 11:00 p.m., and between 1:00 and 1:30 a.m. Additionally, before she left, Donics asked Love if she was okay, and she responded that she was fine. Donics further stated Love appeared normal, had perfect control of her faculties, made straight eye contact, and was not slurring her words.

Because Dr. Leiser's testimony contradicts the testimony given by Donics, there is a fact question as to whether Treasures was aware of Love's intoxication.

*Did Treasures Exercise Control?*

In both *Otis* and *Spruiell,* an affirmative act by the employer was held to be an exertion of control and a breach of the duty to prevent the employees from causing an unreasonable risk of harm to themselves or others. *Otis,* 668 S.W.2d at 308 (employer sent intoxicated employee home after escorting him to the parking lot); *Spruiell,* 809 S.W.2d at 940 (employer forced intoxicated employee to leave a company sponsored chili cook-off). It is Treasures' policy that if a dancer becomes intoxicated while working, the club may remove the dancer from the club floor, place her in the dressing room, take her keys, and call a taxi for her. Treasures, however, never removed Love from the floor, took away her keys, or suggested that she leave. Doncis did, however, have a conversation with Love before she left to ensure she was in a proper condition to drive. As such, there are fact questions regarding whether Treasures asserted control over Love.

■ We hold there are fact issues regarding whether Treasures assumed the duty to exercise reasonable care to see that Love did not cause an unreasonable risk of harm to herself or others. Specifically, there are questions of fact whether Treasures knew of Love's intoxication and whether Treasures exercised control over Love. As such, summary judgment was improperly granted in favor of Treasures on Love's common law negligence and gross negligence claims.[4]

---

4. In this appeal, Treasures argues only about whether Love's status as an independent contractor precludes the application of the holdings in *Otis* and *Spruiell.* We have held that it does not. However, Treasures never argues in the trial court, nor on appeal, that while

We reverse the judgment of the trial court and remand the case.

Love may have been an independent contractor, she was still, nonetheless, a "customer, member, or guest." Absent such argument and summary judgment proof, we need not decide whether Love was also a "customer, member, or guest," and we decline to do so.