Opinion issued March 25, 2010













 

 





 

In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00759-CV

____________


ROBERT LAST AND STEPHANIE LAST, Appellants


V.


QUAIL VALLEY COUNTRY CLUB, L.P., BULL POWER, INC. AND
GLEN McILVAIN, Appellees






On Appeal from the 240th Judicial District Court of

Fort Bend County, Texas

Trial Court Cause No. 03CV131623






MEMORANDUM OPINION

 Appellants, Robert and Stephanie Last (the "Lasts"), challenge the trial court's
take-nothing judgment rendered in favor of appellees, Quail Valley Country Club,
L.P., Bull Power, Inc., and Glen McIlvain (collectively, "Appellees"), after a jury
determined that the Lasts had failed to prove that appellees were negligent in the
circumstances surrounding the operation of a mechanical bull ride. In five issues, the
Lasts contend that the trial court erred in (1) admitting a document that had not been
timely disclosed to them during discovery, (2) refusing their general negligence jury
instruction, (3) refusing their instruction under the "dram shop" statutes, (4) granting
Appellee's motion for directed verdict on the Lasts' claims under the Texas Deceptive
Trade Practices Act ("DTPA") (1), and (5) denying the Lasts' instructions for their
pleaded defenses to the release. We affirm.

Factual and Procedural Background

 On May 4, 2003, the Lasts attended a Missouri City Little League fundraiser
held at the Quail Valley Country Club ("Quail Valley"). As part of the festivities,
patrons were invited to ride a mechanical bull operated by Bull Power, Inc. ("Bull
Power"). Bull Power is wholly owned by Glen McIlvain ("McIlvain"). Patrons who
wanted to ride the mechanical bull were required to obtain a ticket and to sign a
release form relieving Bull Power, among others, of liability. The release form was
entitled, "MECHANICAL BULL RELEASE FORM" in bold, all-capital letters. The
form went on to state, in large, bold font, "Ride at your own risk. . . . This
mechanical bull is designed and built to throw you off." The body of the
document read:

 I understand the danger of riding this mechanical bull. I understand that
this machine may cause serious injuries from a fall, or from being
thrown, or from even being near this machine.

 

 I also release and hold harmless Bull Power, any operator, sponsor, club
owner, managers, or landlords or anyone [sic] you can think of in the
connection with the operation of the mechanical bull from any injury
that may occur past, present, or future due to accidental negligence, or
on purpose.


 I also agree not to file suit against anyone in connection with this
mechanical bull for any reason and also release the right for any of my
family, friends or heirs past, present or future to file suit against anyone
for my involvement with this mechanical bull.


 Above the signature line, in bold font and in all-capital letters, appeared the
words, "I, THE UNDERSIGNED, HAVE READ AND AGREE TO THE
ABOVE." The Lasts both signed the release form. 

 Robert bought a ticket to ride the bull and rode it multiple times. On his third
ride of the evening, Robert fell from the bull. While Robert was in the process of
getting up, the bull swung around and struck him on his head and neck. Robert then
collapsed onto the air mattress around the bull and was life-flighted to a local
hospital. As a result of the incident, Robert was temporarily paralyzed and underwent
surgery for a spinal cord injury.

 The Lasts sued all appellees for negligence, alleging separately that Bull Power
and McIlvain violated the DTPA by engaging in false and misleading business
practices, among other violations. 

 As to Quail Valley's negligence, the Lasts maintained that Quail Valley was
negligent in allowing the bull ride operator to consume alcohol and then to operate
the bull ride and that it was also negligent in providing alcohol to Robert, who was 
obviously intoxicated. At trial, the jury heard conflicting testimony as to whether the
operator of the mechanical bull consumed alcohol during the event. The jury also
heard testimony that Robert consumed alcohol prior to riding the mechanical bull. 
At the close of trial, the jury found that appellees were not negligent with respect to
any of the Lasts' claims. The jury also found that the release executed by Robert was
valid and enforceable as to Bull Power and Quail Valley. The trial court subsequently
rendered its judgment upon the jury's verdict in favor of the appellees.

Admission of Jeff Cook's Release

 In his first issue on appeal, the Lasts contend that the trial court erred when it
allowed the admission of a release signed by Jeff Cook, a volunteer and donor for the
Missouri City Little League, on the ground that it had not been timely produced
during discovery. Cook was the only witness to testify for the Lasts that the operator
of the mechanical bull was drinking beer and may have been intoxicated while
operating the bull. 


A. Standard of Review

 Evidentiary rulings are committed to the trial court's sound discretion. Bay
Area Healthcare Gr., Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007). We review
a trial court's decision to admit or to exclude evidence for an abuse of that discretion. 
In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion
when it acts without reference to any guiding rules or principles. Garcia v. Martinez,
988 S.W.2d 219, 222 (Tex. 1999). We must uphold the trial court's evidentiary
ruling if there is any legitimate basis for the ruling. Owens-Corning Fiberglass Corp.
v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Oyster Creek Fin.Corp. v. Richwood Invs.
II, Inc., 176 S.W.3d 307, 317 (Tex. App.--Houston [1st Dist.] 2004, pet. denied).

 Prior to trial, the Lasts served a request for production on Bull Power to
produce any documents relating to the operation of the mechanical bull used at the
event made the basis of the lawsuit. The Lasts also requested that Bull Power provide
a copy of the "Mechanical Bull Release Form." In response to their request, Bull
Power produced the release signed by the Lasts, but not the release signed by Cook. 

 During trial, while counsel for Quail Valley was cross-examining Stephanie in
the presence of the jury, counsel offered the release signed by Cook, who had testified
for the Lasts the preceding day. The document was offered for the purpose of calling
into question the credibility of Cook, who had testified previously that he had not
signed the release. The trial court overruled the Lasts' objection that the document
had not been timely produced during discovery. 

 In response to the objection, Quail Valley contended that it had been provided
a copy of the document for the first time immediately prior to its presentation at trial. 
Counsel for Bull Power and McIlvain further explained that they had been unable to
locate the document during the discovery period due to a flood that had caused the
release to be misplaced. Counsel explained that, after a more extensive search, they
had been able to locate the document following Cook's testimony at trial. 

B. Applicable Law

 The purpose of the discovery rules is to encourage full discovery of the issues
and facts before trial so that parties can make realistic assessments of their respective
positions in order to facilitate settlements and to prevent trial by ambush. Alvarado
v. Farah Mfg. Co., 830 S.W.2d 911, 913-14 (Tex. 1992); Gee v. Liberty Mut. Fire
Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989); Gutierrez v. Dallas Indep. Sch. Dist., 729
S.W.2d 691, 693 (Tex. 1987). 

 The rules also prescribe the penalty for failing to make, to amend, or to
supplement a discovery response in a timely manner. Rule of Civil Procedure
193.6(a) is entitled "Failing to Timely Respond-Effect on Trial" and provides:

 (a) Exclusion of Evidence and Exceptions. A party who fails to
make, amend, or supplement a discovery response in a timely manner
may not introduce in evidence the material or information that was not
timely disclosed, or offer the testimony of a witness (other than a named
party) who was not timely identified, unless the court finds that:


 (1) there was good cause for the failure to timely make,
amend, or supplement the discovery response; or


 (2) the failure to timely make, amend, or supplement the
discovery response will not unfairly surprise or unfairly prejudice the
other parties.


Tex. R. Civ. P. 193.6(a). 

 The rule is mandatory, and the penalty--exclusion of evidence--is automatic,
absent a showing of (1) good cause, (2) lack of unfair surprise, or (3) lack of unfair
prejudice. Alvarado, 830 S.W.2d at 914 (applying former rule 215(5)); Pilgrim's
Pride Corp. v. Smoak, 134 S.W.3d 880, 902 (Tex. App.--Texarkana 2004, pet.
denied) (citing rule 193.6(a)). The sanction of automatic exclusion of undisclosed
evidence, subject to the exceptions set forth in the rule, is well established. Alvarado,
830 S.W.2d at 914 (applying former rule 215(5)); see Gee, 765 S.W.2d at 396 (Tex.
1989) (same); Morrow v. H.E.B., Inc., 714 S.W.2d 297, 297-98 (Tex. 1986) (same);
Smoak, 134 S.W.3d at 902. The party offering the undisclosed evidence has the
burden to establish good cause, lack of surprise, or lack of unfair prejudice, which
must be supported by the record. Tex. R. Civ. P. 193.6(b).

C. Discussion

 The Lasts argue that the trial court abused its discretion in admitting the
previously undisclosed release because it served to unfairly surprise them and was
admitted without good cause. 

 The Lasts rely on Oscar Luis Lopez v. La Madeleine of Tex., Inc., 200 S.W.3d
854 (Tex. App.--Dallas 2006, no pet.), for the proposition that the failure to timely
produce evidence admitted even for impeachment purposes is grounds for remand and
a new trial. However, in Lopez, counsel for La Madeleine intentionally failed to
disclose evidence that should have been excluded. Here, McIlvain and Bull Power
represented to the trial court that the previously undisclosed evidence was
unintentionally misplaced until the day before it was presented at trial. There was no
indication in the record that the document was intentionally withheld from
production, as was the document in Lopez. Therefore, the trial court did not act in an
arbitrary or unreasonable manner in admitting the Cook release because appellees
demonstrated good cause for its admission.

 The Last's first issue is overruled.

Submission of General Negligence Questions to the Jury

 In their second issue, the Lasts contend that the trial court erred when it refused
their proposed general negligence questions against Quail Valley. At the charge
conference, the Lasts submitted jury questions for common law negligence based
upon premises liability. Quail Valley objected, arguing that the Lasts' common law
causes of action were precluded under the Dram Shop Act. See Tex. Alco. Bev.
Code §§ 2.01, 2.02, 2.03 (Vernon 2005) (Chapter 2 of the Texas Alcoholic Beverage
Code is commonly known as the "Dram Shop Act."). The trial court agreed and
refused to submit any general negligence questions.

A. Applicable Law

 A party is entitled to an issue if its submission is supported by the evidence of
record. Roy v. Howard Glendale Funeral Home, 820 S.W.2d 844, 846 (Tex.
App.--Houston [1st Dist.] 1991, writ denied). A trial court has broad discretion in
submitting jury questions. Id. We apply an abuse of discretion standard when
reviewing the submission of jury questions. Tex. Dep't of Human Servs. v. E.B., 802
S.W.2d 647, 649 (Tex. 1990). If the trial court acts (1) without reference to any
guiding rules or principles, (2) arbitrarily, or (3) unreasonably, then the court has
abused its discretion. Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). For this
Court to reverse the trial court's decision based on charge error, the error must have
been harmful; that is, it must have "probably caused the rendition of an improper
judgment." Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219
S.W.3d 563, 580 (Tex. App.--Austin 2007, no pet.).

 Before the enactment of the Dram Shop Act in 1987, no cause of action existed
against a provider of alcoholic beverages for injuries resulting from a patron's
intoxication. Smith v. Sewell, 858 S.W.2d 350, 352 (Tex. 1993); Steak & Ale of Tex.,
Inc., v. Borneman, 62 S.W.3d 898, 906 (Tex. App.--Fort Worth 2001, no pet.);
Holguin v. Ysleta Del Sur Pueblo, 954 S.W.2d 843, 852 (Tex. App.--El Paso 1997,
pet. denied). The Dram Shop Act provides that commercial providers of alcohol may
be liable for the actions of their intoxicated customers if (1) it was apparent to the
provider that the individual being sold, served, or provided with alcohol was
obviously intoxicated to the extent that he presented a clear danger to himself and
others and (2) the patron's intoxication was the proximate cause of the damages
suffered. Tex. Alco. Bev. Code Ann. §§ 2.01(1), 2.02(b) (Vernon 2005); Smith,
858 S.W.2d at 325. A "provider" under the Act is "a person who sells or serves an
alcoholic beverage under authority of a license or permit issued under the terms of
this code or who otherwise sells an alcoholic beverage to an individual." Tex. Alco.
Bev. Code Ann. § 2.01(1).

 The Dram Shop Act "provides the exclusive cause of action for providing an
alcoholic beverage to a person 18 years of age or older." (2) Id. § 2.03(c). The Act also
states that "[the] liability of providers under this chapter for the actions of their
employees, customers, members, or guests who are or become intoxicated is in lieu
of common law or other statutory law warranties and duties of providers of alcoholic
beverages." Id. § 2.03(a) (Vernon 2005).

B. Discussion 

 The Lasts allege that Quail Valley negligently created an environment that
allowed the operator of the mechanical bull to be served alcohol and to become
intoxicated. Further, the Lasts allege that Bull Power, as an independent contractor
who was operating the mechanical bull on Quail Valley's premises, was negligent
because the operator was drinking alcohol and running "an obviously dangerous
machine." 

 Texas law is unequivocal that the Dram Shop Act is the exclusive means of
pursuing liability against a provider, and we are not persuaded that deviation from
this standard is warranted in the instant case. As our sister court recently stated in a
similar premises liability case:

 We may not ignore the Legislature's express statement that chapter 2 is
the exclusive cause of action for providing alcoholic beverages to a
person eighteen years of age or older and that it is in lieu of any other
statutory or common law duty of providers. Thus, we hold that chapter
2 means what it says and that it sets forth the exclusive cause of action
for providing alcohol to a person eighteen years of age and older. 


Parker v. 20801, Inc., 194 S.W.3d 556, 561 (Tex. App.--Houston [14th Dist] 2006)
(rev'd on other grounds); see also F.F.P. Operating Ptnrs., L.P. v. Duenez, 237
S.W.3d 680, 691 (Tex. 2007) (holding that the Act supplants in a singled codified
action all common law theories that previously could have been employed by the
injured party against a provider.) Thus, we hold that the Lasts' common law claims
were abrogated by the Dram Shop Act and that the trial court did not abuse its
discretion in refusing to submit those claims to the jury.

 The Lasts argue, however, that the Dram Shop Act does not preclude common
law liability for a commercial server based on an independent contractor's actions and
that, because Bull Power, Inc., was an independent contractor, the Dram Shop Act is
not their exclusive cause of action. In support of this argument, the Lasts cite Love
v. D. Houston, Inc., 67 S.W.3d 244, 247 (Tex. App.--Houston [1st Dist.] 2000), aff'd,
92 S.W.3d 450 (Tex. 2002). In Love, this Court held that because a special
relationship exists between a commercial server and its independent contractors,
additional duties may extend beyond those articulated within the Dram Shop Act. Id.
at 247-48; see also Spruiell v. Schlumberger Ltd., 809 S.W.2d 935 (Tex.
App.--Texarkana 1991, no writ). 

 We find the facts in Love inapposite to the instant case. Here, the record does
not indicate that Bull Power, Inc., the owner and operator of the mechanical bull, was
Quail Valley Country Club's employee or contractor. In fact, the record indicates that
Bull Power's services during the event were paid for by the Missouri City Little
League. The record does not reveal any evidence, and the Lasts point us to none,
supporting the contention that Quail Valley had control over the bull operator or had
knowledge of his alleged intoxication. Therefore, the record does not establish the
special relationship present in Love.

 Accordingly, we overrule the Lasts' second issue.

Requested Jury Instruction Under Dram Shop Act

 In their third issue, the Lasts argue that the trial court erred when it denied
their requested negligence instruction under the Dram Shop Act. Question 1 of
the court's charge that was submitted inquired as follows:

 With regard to Quail Valley, "Negligence" means providing,
under authority of a license, an alcoholic beverage to a recipient
when it is apparent to the provider that the recipient is obviously
intoxicated to the extent that he presents a clear danger to himself
and others.


 You are instructed that negligence, if any, of Quail Valley, was a
proximate cause of the injury in question if the recipient's
intoxication was a proximate cause of the injury in question.

 The Lasts requested that the jury be instructed "with respect to Quail Valley
'negligence' means providing under authority of a license an alcoholic beverage to
a recipient when it is apparent or should have been apparent to the provider that the
recipient is obviously intoxicated to the extent that he presents a clear danger to
himself and others." The Lasts assert they were entitled to the requested instruction
because (1) Quail Valley's witnesses testified that it was possible for the operator to
have been served alcohol and to have been drinking at the event, even though they
did not see the operator drink alcohol, and (2) Cook testified that the operator was
drinking beer while operating the mechanical bull. We disagree.

 Dram shop liability questions are to be submitted to the jury such that they
"track the language of the provision as closely as possible." See Borneman v. Steak
& Ale of Tex., Inc., 22 S.W.3d 411, 413 (Tex. 2000). Here, the court's charge tracked
the negligence language of the Dram Shop Act. Thus, the trial court did not abuse its
discretion in refusing appellants' requested jury instruction.

 The Lasts' third issue is overruled.

Directed Verdict


 In their fourth issue, the Lasts allege that the trial court erred in granting
Appellees' motion for directed verdict on the Lasts' claims under the DTPA.

A. Standard of Review

 The standard of review for the denial of a directed verdict is a legal sufficiency
or "no evidence" standard of review. Mauricio v. Castro, 287 S.W.3d 476, 478 (Tex.
App.--Dallas 2009, no pet.). In reviewing the legal sufficiency of the evidence, we
view the evidence in the light most favorable to the fact finding, crediting favorable
evidence if reasonable persons could, and disregarding contrary evidence unless
reasonable persons could not. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex.
2005).

 A directed verdict for a defendant may be proper in two situations: when (1)
a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right
to recover and (2) if the plaintiff either admits or the evidence conclusively
establishes a defense to the plaintiff's cause of action. Prudential Ins. v. Fin. Review
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).

B. Discussion


 Section 17.49(e) of the DTPA specifically provides that "except as specifically
provided by Subsections (b) and (h), Section 17.50, nothing in this subchapter shall
apply to a cause of action for bodily injury or death or for the infliction of mental
anguish." (3) Tex. Bus. & Com. Code § 17.49 (West 2002). The Lasts allege that
Robert sustained personal injuries when he was thrown from the mechanical bull;
thus the Lasts' claim is a personal injury claim. The Legislature has expressed its
intent that the DTPA does not provide a cause of action for personal injury claims. 
See id. When the DTPA was revised in 1995, the revisions represented "a sweeping
measure to remove most personal injury claims from the purview of the DTPA." 
Bivins et al., The 1995 Revisions to the DTPA: Altering the Landscape, 27 Tex.
Tech. L. Rev. 1441, 1448 (1996). Commenting on the new law, the drafters said:


 The 74th Legislature opted to exclude claims for bodily injury and death
as part of the effort to restore the DTPA to be chiefly a means of relief
for individual or small business consumers who have been taken
advantage of by unscrupulous individuals or businesses. The DTPA had
become an avenue for far too many lawsuits relating to a variety of
claims outside of the consumer-business relationship, including personal
injury litigation.


Id. at 1448 n.33 (citing SENATE COMM. ON ECONOMIC DEV., BILL
ANALYSIS, Tex. H.B. 668, 74th Leg. R.S. (1995)) (stating that "the DTPA has
become an avenue for numerous lawsuits, making the application of the DTPA
inconsistent with the original intent.").

 Consequently, the trial court did not abuse its discretion in granting Appellees'
motion for a directed verdict.

 The Lasts' fourth issue is overruled.

Failure to Submit Requested Jury Instruction Regarding Defenses to Waiver
of Liability


 In their fifth issue, the Lasts complain that the trial court erred when it failed
to submit to the jury all of the pleaded defenses to the waiver of liability signed by
Robert. The Lasts argued that Robert's signed release was invalid because (1) it did
not satisfy the fair notice requirement under Texas law; (2) it was not enforceable
under the "unity of release" rule; (3) it failed for lack of consideration; (4) it was
procured by fraud or misrepresentation; (5) there was a material breach of the
contract; and (6) it violated public policy. The trial court submitted only the Lasts'
issues relating to fraud, misrepresentation, and fair notice.

A. Unity of Release

 Again, a party is entitled to an issue if its submission is supported by the
evidence of record. Roy, 820 S.W.2d at 846. The Lasts argue first that they properly
pleaded the defense of "unity of release" to the trial court and that the evidence
presented at trial supported its submission to the jury. The unity of release rule
pertains to situations in which one party releases another from a cause of action that
has yet to be adjudicated. McMillen v. Klingensmith, 467 S.W.2d 193 (Tex. 1971). 
However, on appeal, the Lasts do not explain how the evidence presented at trial
supports the submission of this defense to the jury. Moreover, the Lasts' challenge
contains no analysis or citation to authority. It is thus inadequately briefed, and we
overrule it for this reason. See Tex. R. App. P. 38.1(i); Howeth Invs., Inc. v. City of
Hedwig Vill., 259 S.W.3d 877, 902 (Tex. App.--Houston [1st Dist.] 2008, pet.
denied).

B. Lack of Consideration

 Next, the Lasts claim that there was a lack of consideration in the execution of
the waiver; thus a fact issue regarding its enforceability exists. However, as a
condition of allowing Robert to ride the mechanical bull, execution of the release was
required. By electing to participate, Robert accepted the consideration proffered by
Appellees and granted the release in return. When a releasor acquires a legal right to
do that which he would not otherwise be entitled in exchange for signing a release,
the releasor receives a benefit. Tamez v. Sw. Motor Transp., Inc., 155 S.W.3d 564,
571 (Tex. App.--San Antonio 2004, no pet.). Thus, consideration consists of
allowing the participant to engage in a voluntary activity that he had no legal right to
do. Id. The release in this instance was therefore supported by consideration as a
matter of law, and the Lasts were not entitled to submission of the issue to the jury.

C. Material Breach of Contract

 Next, the Lasts claim that there was a material breach of the release terms and
that the release was void because the operator of the mechanical bull was drinking
alcohol and engaging in horseplay. The body of the release reads as follows:

 I understand the danger of riding this mechanical bull. I understand that
this machine may cause serious injuries from a fall, or from being
thrown, or from even being near this machine.

 

 I also release and hold harmless Bull Power, any operator, sponsor, club
owner, managers, or landlords or anyone [sic] you can think of in the
connection with the operation of the mechanical bull from any injury
that may occur past, present, or future due to accidental negligence, or
on purpose.


 I also agree not to file suit against anyone in connection with this
mechanical bull for any reason and also release the right for any of my
family, friends or heirs past, present or future to file suit against anyone
for my involvement with this mechanical bull.

 A review of the release terms reveals that the release merely permits each
participant to ride the mechanical bull in exchange for the execution of the release. 
The release form does not make any promises or agreements, nor does it create any
warranty, regarding the operation of the equipment or the conduct of the operator. 
Therefore, whether the operator of the bull ride may have been consuming alcohol or
engaging in horseplay has no bearing upon the breach of the release form. 
Consequently, the evidence of record does not support the submission of the Lasts'
breach of contract claim to the jury. See Roy, 820 S.W.2d at 846.

D. Violation of Public Policy

 Finally, the Lasts claim that the release was void because it violated public
policy and that this defense should have been submitted to the jury. But again, the
Lasts do not explain how the evidence presented at trial supports the defense's
submission. Also, the Lasts' challenge contains no analysis or citation to authority. 
It is thus inadequately briefed, and we overrule it for this reason. See Tex. R. App.
P. 38.1(i); Howeth Invs., 259 S.W.3d at 902.

 The Lasts' fifth issue is overruled.


CONCLUSION


 The judgment of the trial court is affirmed.






 Sherry Radack


 Chief Justice




Panel consists of Chief Justice Radack and Justices Alcala and Higley. 
1. See Tex. Bus. & Com. Code Ann. § 17.01, et. seq. (West 2002).
2. The Legislature enacted the Dram Shop Act on June 1, 1987. Act of June 1,
1987, 70thLeg., ch. 303, § 3, 1987 Tex. Gen. Laws 1674, amended by Act of
June 20, 2003, 78th Leg., ch. 456, § 1, 2003 Tex. Gen. Laws 1698, 1698,
amended by Act of June 17, 2005, 79th Leg., ch. 643, § 1, 2005 Tex. Gen. Laws
1617, 1617. Two days later, the Texas Supreme Court decided El Chico v.
Poole, 732 S.W.2d 306, 314 (Tex. 1987), in which it stated that providers have
a duty under both common law negligence principles and the newly enacted
Dram Shop Act not to serve alcoholic beverages to a patron when the provider
knows or should know that the patron is intoxicated. However, because the
Dram Shop Act did not go into effect until June 11, 1987, seven days after the
El Chico decision, Texas courts have recognized that the Legislature created
a much more limited statutory cause of action against commercial providers of
alcoholic beverages than El Chico suggests. Smith, 858 S.W.2d at 353.
3. The relevant subsections of 17.50 read:


 (b) In a suit filed under this section, each consumer who prevails may
obtain:


 (1) the amount of economic damages found
by the trier of fact. If the trier of fact finds
that the conduct of the defendant was
committed knowingly, the consumer may also
recover damages for mental anguish, as found
by the trier of fact, and the trier of fact may
award not more than three times the amount
of economic damages; or if the trier of fact
finds the conduct was committed
intentionally, the consumer may recover
damages for mental anguish, as found by the
trier of fact, and the trier of fact may award
not more than three times the amount of
damages for mental anguish and economic
damages. 


 . . .


 (h) Notwithstanding any other provision of this subchapter, if a
claimant is granted the right to bring a cause of action under this
subchapter by another law, the claimant is not limited to recovery
of economic damages only, but may recover any actual damages
incurred by the claimant, without regard to whether the conduct
of the defendant was committed intentionally. For the purpose of
the recovery of damages for a cause of action described by this
subsection only, a reference in this subchapter to economic
damages means actual damages. In applying Subsection (b)(1) to
an award of damages under this subsection, the trier of fact is
authorized to award a total of not more than three times actual
damages, in accordance with that subsection.