# Supreme Court of Texas

No. 23-0662

Raoger Corporation,
*Petitioner*,

v.

Barrie Myers,
*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued January 13, 2025**

JUSTICE BOYD delivered the opinion of the Court.

The Texas Dram Shop Act creates a statutory claim against a "provider" who sells or serves alcohol to a customer if the provision of the alcohol and resulting intoxication causes harm to the claimant. TEX. ALCO. BEV. CODE § 2.02(b). The provider can only be liable, however, if "at the time the provision occurred it was apparent to the provider" that the customer "was obviously intoxicated to the extent that he presented a clear danger to himself and others." *Id*. § 2.02(b)(1). The trial court concluded in this case that the claimant produced no evidence to

establish this fact and granted summary judgment for the provider. The court of appeals reversed, concluding that the evidence creates a fact issue. We agree with the trial court. Although claimants may rely on circumstantial evidence to establish the necessary fact, the evidence here impermissibly requires inferences upon inferences to establish how the customer may have appeared when the provider served him. Because we also conclude that the trial court did not abuse its discretion in denying the claimant's motion for continuance, we reverse the court of appeals' judgment and reinstate the trial court's summary judgment in the provider's favor.

## I.
## Background

Barrie Myers was seriously injured in an automobile crash shortly after midnight on November 30, 2018. Some facts regarding the events leading up to the crash are at least essentially undisputed. Nasar Khan and Kelly Jones arrived at Cadot Restaurant in Dallas around 9:45 or 10:00 p.m. on November 29. They closed their bar tab around 10:30 p.m. They left the restaurant at some point after that, and Khan drove Jones back to her apartment about five to ten minutes away. Khan went inside with Jones and left the apartment shortly before midnight. Just after midnight on November 30, Khan rear-ended Myers's vehicle, causing it to roll multiple times. At 3:06 a.m., Khan's blood was drawn and showed a blood alcohol content (BAC) of 0.139, well above the legal limit of 0.08.

The record, however, leaves most other facts about that evening unclear. Khan testified that they arrived at Cadot around 9:45 or 10:00 p.m. and were at the restaurant for about two hours. The bar tab,

2

however, shows that it was opened at 10:23 and closed at 10:30. Khan also testified that they left the restaurant between five and thirty minutes after closing their tab at 10:30, which would mean they left by about 11:00 p.m. Jones lived only five to ten minutes away, and Khan testified he went inside her home, but he says he didn't stay long because it was getting late and he had to be up in the morning. Yet Jones testified that he left her house shortly before midnight, and the crash occurred less than ten minutes later. This limited evidence does not clarify how long Khan was at Cadot or how long he was at Jones's home before the crash occurred.

Nor does the record clarify how much alcohol Khan consumed that evening. Khan testified that he was "100% sober" when he arrived at Cadot and that Cadot was the only place he consumed alcohol that night. The bar tab shows that he and Jones ordered and paid for four alcoholic drinks (three vodka drinks and a sparkling wine), but Khan testified that he paid for a beer with cash before they opened the tab and did not get a receipt.[1] Jones testified that she drank the glass of wine and a "bit" of the vodka drinks Khan ordered. And Khan testified that he is unsure whether they opened only one tab or two. Ultimately, Khan testified he had at least three and possibly four drinks that night, but he conceded that, based on his BAC test results, the bartender served him "too much." Also based on the BAC test, the bartender opined that Khan would have had to have consumed eight drinks to test at 0.139,

_____

[1] After the crash, Khan told the police that he only drank two beers that night.

and Myers's expert witness opined that Khan would have had anywhere from ten to nineteen drinks, depending on his weight.[2]

As mentioned above, however, and as discussed further below, the Dram Shop Act provides for liability based not on the amount of alcohol a customer was served or consumed but on whether it was apparent to the provider that the customer was obviously intoxicated to the extent he presented a clear danger when the provider served him. TEX. ALCO. BEV. CODE § 2.02(b)(1). After Myers sued Cadot for violating the Act, Cadot filed no-evidence and traditional summary-judgment motions arguing that no evidence exists to establish this necessary fact. The trial court agreed and granted Cadot's motions. The court of appeals reversed, holding that a fact issue exists because a reasonable jury could make the necessary finding based on concessions Khan himself made in his deposition about his appearance and demeanor at Cadot. 698 S.W.3d 906, 913 (Tex. App.—Dallas 2023). We granted Cadot's petition for review.

## II.
## Dram Shop Liability

Historically, courts held under the common law that a provider of alcoholic beverages could not be held liable for harm the customer caused as a result of their intoxication. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 309 (Tex. 1987). Courts that followed this rule reasoned that the customer's conduct was the sole proximate cause of the harm and that the harm itself was not foreseeable to the provider. *Id.* This Court

---

[2] The police records available to the expert witness inconsistently listed Khan's weight as 225 and 250 pounds.

rejected that historic rule in *Poole*, however, and held that alcoholic-beverage licensees owe a duty and can be liable if they serve alcohol to a customer they know or should know is intoxicated and thereby proximately cause harm to another. *Id.* at 314.

The very week the Court announced that holding, however, the Legislature adopted the Dram Shop Act. *Id.* (citing Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (codified at TEX. ALCO. BEV. CODE § 2.02)). As we acknowledged in *Poole*, the Act does not just require that the provider served a customer when it knew or should have known that the customer was intoxicated; instead, it requires proof that the provider served the customer when it was *apparent* to the provider that the customer was *obviously* intoxicated to the extent that he *presented a clear danger* to himself and others. *Id.* (quoting TEX. ALCO. BEV. CODE § 2.02). This, we explained, creates "a much more onerous burden of proof for an injured plaintiff" than the common-law "knew or should have known" standard we announced in *Poole*. *Id.*[3] As of the Act's effective date, this more onerous statutory standard "exclusively" governs claims against providers of alcoholic

---

[3] *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 684–85 (Tex. 2007) (citing *Poole*, 732 S.W.2d at 314), 685 (emphasizing that the plaintiff must show that the customer was "'*obviously* intoxicated,' not just intoxicated, when the dram shop serve[d] him alcohol" (citing TEX. ALCO. BEV. CODE § 2.02(b)(1))); *Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 136 (Tex. 1994) (Enoch, J., dissenting) (describing the "limited circumstances" under which a Dram Shop Act action can be brought against a provider of alcohol).

5

beverages. *Id.* at 312.[4] We have addressed the Dram Shop Act in a few cases since *Poole*, most recently in 2008,[5] but we have not previously addressed the sufficiency of evidence required to establish liability.

Because the Act does not define "apparent" or "obvious," we give the terms their ordinary meaning. *Tex. State Bd. of Exam'rs of Marriage*

---

[4] *See* TEX. ALCO. BEV. CODE § 2.03(a) (stating that the liability of providers "for the actions of their . . . guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages"), (c) ("This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older."); *Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 275 n.1 (Tex. 1989) ("For causes of action accruing on or after June 11, 1987, the civil remedy for one injured by an alcoholic beverage licensee's intoxicated patron is governed by statute." (citing TEX. ALCO. BEV. CODE §§ 2.02, .03)).

[5] *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 394 (Tex. 2008) (interpreting the Dram Shop Act's safe-harbor provision); *Duenez*, 237 S.W.3d at 682 (holding the proportionate-responsibility statute applies to Dram Shop Act claims); *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001) ("[T]he Legislature has . . . declined to include social hosts in the Dram Shop Act's civil liability scheme. Accordingly, we will not disturb the Legislature's regulatory scheme by judicially recognizing a cause of action against social hosts who 'make alcohol available' to guests under age eighteen."); *Borneman v. Steak & Ale of Tex., Inc.*, 22 S.W.3d 411, 413 (Tex. 2000) (holding a jury question that failed to ask whether intoxication was a proximate cause of the injury was erroneous); *Smith v. Merritt*, 940 S.W.2d 602, 605 (Tex. 1997) (holding the Dram Shop Act "creates a statutory cause of action against *commercial* providers only," meaning social-host defendants do not owe a duty under the Act); *Southland Corp. v. Lewis*, 940 S.W.2d 83, 85 (Tex. 1997) ("Under [the Dram Shop Act], the sale of alcohol to a passenger cannot be the cause in fact of an accident unless the passenger caused the accident by interfering with the operation of the car."); *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 717 (Tex. 1995) (holding a radio station may not be held liable "under theories of joint enterprise, civil conspiracy, and negligent promotion for personal injuries resulting from a nightclub's violations" of the Dram Shop Act); *Smith v. Sewell*, 858 S.W.2d 350, 355 (Tex. 1993) ("[A]n individual who is provided, sold, or served alcoholic beverages in violation of [the Dram Shop Act] and injures *himself* may assert a cause of action against the provider." (emphasis added)).

*& Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017). "Apparent" ordinarily means "[v]isible; manifest; obvious," *Apparent*, BLACK'S LAW DICTIONARY (12th ed. 2024), and "obvious" means "[e]asily discovered, seen, or understood; readily perceived by a person's senses or intellect," *Obvious*, BLACK'S LAW DICTIONARY (12th ed. 2024).[6] Although the terms bear similar meanings, the Act requires proof that the customer was so "obviously" intoxicated as to present a *"clear danger" and* that this condition was "apparent *to the provider*." TEX. ALCO. BEV. CODE § 2.02(b)(1) (emphases added).

We must determine whether this summary-judgment record contains some competent evidence[7] to establish this fact.[8] We conclude it does not. Indisputably, the record contains substantial evidence that Khan did *not* appear intoxicated when Cadot served him that night. Khan testified that he was "acting normal" when he was at Cadot, was not slurring his speech, did not have bloodshot or watery eyes, and was

_____

[6] "Obvious" had essentially the same definition when the Act was passed in 1987: "Easily discovered, seen, or understood; readily perceived by the eye or the intellect; plain; patent; apparent; evident; clear; manifest." *Obvious*, BLACK'S LAW DICTIONARY (5th ed. 1979).

[7] TEX. R. CIV. P. 166a. We review summary-judgment orders de novo*, Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 717 (Tex. 2024), viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

[8] The parties do not dispute that Cadot is a "provider" that "provi[ded]" Khan with alcohol on the night in question. *See* TEX. ALCO. BEV. CODE § 2.01(1), (2) (defining "Provider" as "a person who sells or serves an alcoholic beverage under authority of a license or permit issued under the terms of this code or who otherwise sells an alcoholic beverage to an individual" and "Provision" to include "the sale or service of an alcoholic beverage").

walking "very normally." He does not believe the bartender thought he was intoxicated, Jones did not express any concerns about him driving, Khan would not have driven if he felt he was intoxicated, and he was not concerned about driving because he "didn't feel anything." Similarly, Jones testified that Khan did not appear intoxicated at Cadot or afterwards, and Cadot's owner testified that Khan did not appear intoxicated and "looked fine" when he arrived, when he visited with the owner, and when he left the restaurant. The bartender who served Khan testified that she did not recall the night in question but insisted that she did not recall anything out of the ordinary occurring that night and that she would not have served alcohol to a customer who appeared intoxicated.

Similarly, the police officer who reported to the crash scene shortly after midnight testified that Khan's speech and walk were normal at that time and that the officer "had no initial clue to make [him] think Khan was intoxicated." The officer explained that Khan looked "disheveled" due to the crash and was "excited [and] elevated, . . . maybe from adrenaline," but appeared "normal for the circumstances." No one at the scene said that they thought Khan appeared intoxicated, but a police sergeant noted at one point that he thought he smelled an odor of alcohol. Until then, the reporting officer did not suspect that Khan might be intoxicated. Because of the odor of alcohol, however, the officer followed Khan to the hospital and interviewed him further there. At the hospital, the officer could not tell by looking at Khan that he was intoxicated. His speech was normal, but he did have a "strong odor of alcohol." The officer administered a Horizontal Gaze Nystagmus test

around 1:00 a.m. and detected signs of intoxication at that time. When Khan refused to voluntarily provide a blood specimen, the officer placed him under arrest for suspicion of driving while intoxicated and proceeded to obtain a warrant for the blood draw that ultimately occurred at just after 3:00 a.m.

Viewing this evidence in the light most favorable to Myers, we have no trouble concluding that some evidence supports a finding that Khan was intoxicated after the crash and that he exhibited signs of intoxication at that point. We can also infer from the BAC test results that he consumed a large amount of alcohol *at some point* before the crash and was even perhaps intoxicated to some extent at Cadot on November 29. But this evidence does not support a finding that it was apparent to Cadot that Khan was intoxicated—let alone that he appeared to be so obviously intoxicated as to present a clear danger.

Myers relies on additional evidence to support that finding. Specifically, Khan conceded in his deposition that it was "possible" that he "might have" exhibited signs of intoxication at Cadot, that Cadot "served somebody who was intoxicated," and that he believes that "the server[9] should have observed that [he was] intoxicated while [he was] dining at Cadot." In addition, the bartender—who testified she could not recall Khan or the night in question—agreed in her deposition that a person who consumed eight drinks (the amount she believed would be

---

[9] In his deposition, Khan was questioned about his "server or the bartender" on the night in question. However, Khan clarified that "[i]t was just one person"—meaning, presumably, that the bartender was also his server. His deposition testimony, however, refers to the bartender simply as his "server."

required to reach the 0.139 BAC at 3:06 a.m.) would have shown signs of intoxication including slurred speech, abnormal walking, and being loud and obnoxious. The police officer agreed in his deposition that, based on the BAC test, he "would assume" and "believe" that Khan was showing signs of intoxication at Cadot. And Myers's expert witness opined that Khan would have had to consume ten to nineteen drinks that evening to reach the 0.139 BAC.

Ultimately, this evidence of how Khan might or even would have appeared at Cadot and of how much alcohol he must have consumed on the night in question relies on the results of the BAC test. Even Khan's own concessions—which conflict with his (and all the other witnesses') testimony about his actual condition and appearance at the restaurant—were based on inferences driven by the test results. As Khan himself testified, "I really didn't feel any level of intoxication, but the blood work proves it otherwise," and "I didn't really feel—I was walking, talking, straight line, and by looking at the blood work, yes."

But for such circumstantial evidence to be competent, it must be sufficient "to constitute the basis of a legal inference" and not merely permit "speculative conclusions." *Green v. Tex. & Pac. Ry. Co.*, 81 S.W.2d 669, 673 (Tex. [Comm'n Op.] 1935); *see Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993) ("[W]e are not empowered to convert mere suspicion or surmise into some evidence."). Findings "must be supported by facts in evidence, not conjecture," and we cannot "pile speculation on speculation and inference on inference." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003). Speculative and conclusory testimony, by experts and lay witnesses alike, is incompetent and cannot

support or defeat summary judgment. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004).

Dram Shop Act claimants may, of course, rely on circumstantial evidence—like the results of a BAC test taken three to four hours after a drinking episode—to prove the required finding. But such circumstantial evidence must be linked to other probative evidence of the customer's apparent condition when the provider served him.[10] Speculative and conclusory testimony regarding how a customer may or should have appeared based on his BAC, absent additional probative evidence, is insufficient to establish a Dram Shop Act claim.

Here, the circumstantial evidence does not pass muster. Khan's 0.139 BAC at 3:06 a.m. certainly supports an inference that Khan drank an excessive amount of alcohol *at some point* before his blood was drawn, and even (under these facts) before the crash occurred. The expert's

---

[10] *See Davis v. RPoint5 Ventures, LLC*, No. 01-13-00351-CV, 2013 WL 5947981, at *3 (Tex. App.—Houston [1st Dist.] Nov. 5, 2013, pet. denied) ("An expert opinion about a person's blood alcohol concentration and the signs of intoxication a person would exhibit, *when coupled* with other evidence, can be circumstantial evidence of apparent, obvious intoxication." (emphasis added)). For example, a high BAC, coupled with an expert's testimony (taking into account the customer's tolerance for alcohol) that the customer would have exhibited signs of obvious intoxication at the restaurant based on that BAC *and* testimony that the customer in fact exhibited obvious and dangerous signs of intoxication immediately after leaving—perhaps, for example, at the scene of the crash or the hospital—could be sufficient because an inference that the customer was obviously intoxicated at the restaurant could reasonably be drawn from such evidence. The reasonableness of such an inference, however, diminishes as the temporal proximity lengthens between (1) when the customer was at the restaurant and (2) when he exhibited obvious intoxication. *See Alaniz v. Rebello Food & Beverage, L.L.C.*, 165 S.W.3d 7, 15 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

testimony further strengthens that inference. But no evidence links that inference to support subsequent conclusions about Khan's *appearance* at Cadot. The expert witness testified about the *amount* of alcohol Khan must have consumed at Cadot, but said nothing at all about how Khan would have appeared at Cadot.[11] Even assuming that Khan consumed all of the alcohol in his bloodstream that evening at Cadot, that fact may prove how intoxicated he became *at some point* that night, but it does not, standing alone, tend to prove how he *appeared to Cadot* when he was served. Even where a Dram Shop Act claimant presents uncontroverted, direct evidence that the customer consumed an outrageous amount of alcohol *at the dram shop* (evidence that is absent here), that evidence would not *on its own* create a fact issue as to the customer's *appearance* at the dram shop. The relevant inquiry is the customer's appearance to the dram shop when he was served—not whether the customer drank an amount of alcohol at the dram shop that *may* or *should* make *some* people very intoxicated.

---

[11] *Cf. Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 331 (Tex. App.—Eastland 2000, no pet.) (explaining expert testimony that "given such a high [BAC] immediately after the collision, [the patron] would have been obviously intoxicated at the" dram shop and, specifically, that "at a level of .211, [the patron] would have had slurred speech and a staggered walk"); *Love v. D. Hous., Inc.*, 67 S.W.3d 244, 248 (Tex. App.—Houston [1st Dist.] 2000) (holding a fact issue existed as to the dram shop's "aware[ness]" of the customer's intoxication because, while the manager stated he did not notice signs of intoxication, the expert testified "that with a [BAC] of .225, Love would have exhibited clinical symptoms of intoxication, such as disorientation, impaired balance, lack of muscular coordination, a staggering gait, and slurred speech" and that "since Love's blood alcohol level was not taken until three or four hours after she left the club, she would have had an even greater lack of muscular coordination, and would have had trouble standing or walking, when still at the club"), *aff'd*, 92 S.W.3d 450 (Tex. 2002).

Nor do the bartender's or the police officer's testimony create a link between Khan's high BAC and his outward appearance at Cadot. Neither of them testified as to any drunken behavior from Khan at Cadot—and, in fact, the police officer testified that Khan did not appear intoxicated at the crash scene or the hospital. Without more, their opinions regarding how Khan "would" have or may "possibl[y]" have acted at Cadot based on his BAC are "pure speculation." *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 650 (Tex. 1994). And Khan's own deposition concessions are merely speculative statements based on inferences ultimately derived from the BAC results and, as such, are insufficient to defeat summary judgment. *Hamilton v. Wilson*, 249 S.W.3d 425, 427 (Tex. 2008) ("[C]onclusory statements . . . are not sufficient to support or defeat summary judgment." (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997))). Even assuming that all or some of this evidence constitutes some evidence that Khan was intoxicated when he was served at Cadot, it does not constitute evidence that it was apparent to Cadot that he was so obviously intoxicated as to present a clear danger to himself or others.[12]

---

[12] The lack of evidence here stands in stark contrast to evidence Dram Shop Act plaintiffs have presented in other Texas courts. *See, e.g.*, *Perseus Inc. v. Canody*, 995 S.W.2d 202, 205–07 (Tex. App.—San Antonio 1999, no pet.) (affirming liability where: multiple witnesses confirmed the customer took shots at the bar, stumbled at the bar, and had slurred speech; one of his companions explicitly described his intoxication as "obvious to anyone there"; and another offered to pay for his taxi home); *see also Fay-Ray Corp. v. Tex. Alcoholic Beverage Comm'n*, 959 S.W.2d 362, 368 (Tex. App.—Austin 1998, no pet.) (describing evidence that the customer was openly taking shots of liquor, stumbled, fell off his chair, slurred his words, and other testimony that the intoxication was obvious). This case is more factually analogous to *J.D.*

As we have said, the Dram Shop Act imposes a "more onerous burden" than this Court imposed under the common law in *Poole*. The Legislature having made the policy choice to impose such a high standard on which to hold providers liable, our duty is simply to enforce that choice. The record in this case is sparse and leaves many unanswered questions. We can certainly entertain speculations about whether (despite the lack of any challenge) the BAC results were correct, whether (despite Khan's and Jones's testimony to the contrary) Khan consumed additional alcohol after leaving Cadot, or whether (despite all the witnesses' consistent testimony to the contrary) Khan in fact appeared obviously intoxicated at Cadot, the crash scene, or the hospital. But on this record, all of these are mere speculations, insufficient to constitute competent summary-judgment evidence. We thus conclude that the trial court correctly granted summary judgment for Cadot.

---

*Abrams, Inc. v. McIver*, 966 S.W.2d 87 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), where the plaintiff invoked similar circumstantial evidence to prove obvious intoxication, including signs of intoxication at the accident, a toxicologist's opinion that fifteen drinks had been consumed, and the customer had consumed alcohol with little to no food in his stomach. *Id.* at 91. Notably, though, the customer there exhibited much more obvious, and arguably dangerous, signs of intoxication at the crash—slurred speech; confusion; stumbling; and an inability to stand up. Yet the court in *McIver* recognized that the Dram Shop Act imposes a high temporal and visual bar: "Notably missing from this evidence is any testimony that Quinlan was 'obviously intoxicated,' *much less 'to the extent he presented a clear danger to himself and others,' at the time he was provided alcohol* at [the dram shop], or that such condition was then 'apparent' to the provider." *Id.* (emphasis added).

## III.
## Motion for Continuance

Myers contends that, if he failed to meet his evidentiary burden, the trial court abused its discretion by denying his motion to continue the summary-judgment hearing. *See* TEX. R. CIV. P. 166a(i) (requiring courts to provide "adequate time for discovery" before ruling on a no-evidence summary-judgment motion). We disagree.

"A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)). When determining whether a court abused its discretion by denying a continuance motion, we consider a variety of factors, including "the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought." *Id.*

Myers argues that the trial court abused its discretion here because he needed additional time to depose Cadot's owner, who testified by interrogatory answers that Khan did not appear intoxicated at Cadot. But Myers had ample opportunity to depose the owner after joining Cadot in his suit on March 4, 2020, and before the court heard the no-evidence summary-judgment motion on September 16, 2021: 561 days, to be exact. Cadot filed its no-evidence motion on July 2, 2021. Myers deposed the bartender on August 11, 2021, and noticed the owner's deposition for September 24, 2021. Cadot set the hearing on its motions for September 16, 2021. Yet Myers did not attempt to request

an earlier date for the owner's deposition, even though the hearing was set for a week before the deposition date. The trial court thus could have appropriately found, in addition to the long length of the case's pendency, that Myers did not exercise "due diligence" in obtaining the discovery. *Id.* Moreover, Myers failed to establish how the owner's deposition would elicit any new and material evidence, making only the vague assertion that the owner's deposition would elicit "material evidence that is essential to justify Plaintiff's position/Response and to avoid a summary judgment on Plaintiff's claims against Defendant Cadot in this case."

The trial court could have thus appropriately found Myers failed to establish the materiality and purpose of the additional discovery. We therefore hold that its denial of Myers's motion was not an abuse of discretion because it was not "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* We thus overrule Myers's second issue.

## IV.
## Conclusion

We conclude that Myers submitted no competent evidence to establish liability under the Dram Shop Act's high bar. We therefore reverse the court of appeals' judgment and reinstate the trial court's summary judgment in Cadot's favor.

Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** April 11, 2025

16